[No. 7540.]

## WECHTER v. THE PEOPLE.

1.   EVIDENCE—*Circumstantial Evidence*—The prisoner entered a restaurant shortly before the hour of closing, and while the cashier was counting the receipts of the day.   He held a revolver in his hand, and a large handkerchief hung loosely about his neck.   He took one step forward, glanced hastily towards the rear of the room, raised the handkerchief so as to cover his face except the eyes, turned towards the cashier, and as deceased rose to confront him, ordered him to throw up his hands, and at once discharged his revolver inflicting a mortal wound.   He had on the prior evening, and at about the same hour, been observed looking into the restaurant, in range with the cash register.

*Held* in view of sec. 1609 of the Rev. Stat. that direct evidence was presented of an intent to commit robbery, and that under sec. 1624 of the Revised Statutes the jury might award the penalty of death.

2.   ——*Order of Proof*—It is in the discretion of the court to receive in rebuttal evidence which properly should have been presented in chief.   Unless it appears that prejudice to the accused resulted the court of review will not interfere.

3.   NEW TRIAL—*Misconduct of Counsel*—In the prosecution of one accused of the crime of murder alleged to have been committed in an attempted robbery, the district attorney, exhorting the jury to a conviction, and an award of the death penalty, said to them, "It is time for this series of crimes to stop.   Men sent to the penitentiary seldom

serve their sentences"; and when counsel for the prisoner objected to his line of remark, he exclaimed: "I thought you would object to that"; and later when prohibited by the court from pursuing the argument, said to the jury: "This is a good place to stop. It seems to hurt." *Held*, highly improper and deserving a sharp rebuke from the court. But the court declined to hold that the jury could have been influenced thereby to render a verdict not based upon their honest convictions as to the effect of the testimony.

In the same case the prisoner testified that he went to the restaurant to collect money which he had deposited with a young woman whom he thought was dining there with a male escort; that he carried the gun to frighten the escort, and to defend himself, if attacked by the escort. Upon this feature of the testimony the district attorney, in the closing argument, insisted that the prisoner by his own testimony had admitted an attempt to rob. Counsel for the prisoner objecting to this line of remark, the district attorney again insisted to the jury that the prisoner by his statement went to the restaurant to obtain money by force, and that whether it was his own money or the money of another was immaterial. *Held*, that the argument of the district attorney was improper and should have been stopped by the court; but the court having at the time of the objection, called attention to the instructions which the jury would take with them to the jury room, refusing to speak verbally as to the question of law which the objection presented, it was held that by this, the jury must have understood that they should entirely disregard what was said by the district attorney upon this matter, both before and after the objection.

4. MURDER—*Death Penalty—Statute Construed*—The act of March 17, 1911 (Laws 1911 c. 195) has not the effect to repeal sec. 1624 of the Revised Statutes, as to male persons between the ages of sixteen and thirty years.

*Error to Denver District Court.*—Hon. CARLTON M. BLISS, Judge.

Mr. H. E. LUTHE, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, attorney general, Mr. THEODORE M. STUART, Jr., assistant attorney general, for the people.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error, defendant below, was convicted of the crime of murder in the first degree. The jury fixed the penalty at death, and the court pronounced sentence accordingly.

' At the trial the defendant requested the court to instruct the jury that if they found him guilty of homicide committed in the perpetration, or attempted perpetration, of robbery, and not by a deliberate act of homicide, that they should find him guilty of murder in the first degree, but in such case their verdict would stand upon circumstantial evidence, and they could not fix the penalty at death. This request was refused, and the court instructed the jury to the effect that in case they found the defendant guilty of murder in the first degree, they should, in their verdict, fix the penalty to be suffered by the defendant either at imprisonment for life, at hard labor in the penitentiary, or at death.

The statute on the subject of penalty for murder, section 1624 Rev. Stats. 1908, provides:

"* * * All murder which shall be perpetrated by means of poison, * * * or by any kind of willful, deliberate and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate, any * * * robbery * * * shall be deemed murder of the first degree. * *. * The jury before which any person indicted for murder shall be tried, shall, if it find such person guilty thereof, designate by its verdict whether it be murder of the first or second degree, and if murder of the first degree, the jury shall, in its verdict, fix the penalty to be suffered by the person so convicted either at imprisonment for life at hard labor in the penitentiary, or at death; and the court shall thereupon give sentence accordingly. * * * *Provided,* that no person shall suffer the death penalty * * * who shall have been convicted on circumstantial evidence alone."

The theory of the prosecution was, that defendant committed the murder of which he was convicted in an attempt to commit the crime of robbery, or that the killing was willful, deliberate and premeditated. The jury did not designate upon which phase of the case they arrived at their verdict. Counsel for defendant contends that there is no direct proof of the intent of the defendant to commit robbery; that proof

of his intent on this subject is circumstantial, and hence argues that under our statute the death penalty cannot be inflicted. For this reason it is urged the court erred in refusing the instruction requested, and giving the one it did, as the jury should have been instructed upon each phase of the case, and advised that if the verdict was based upon homicide committed in committing, or attempting to commit, a robbery, the death penalty could not be inflicted.

In brief, the testimony on the part of the people was as follows: W. Clifford Burrowes was the person killed. He was shot by the defendant in the White House Cafe, which is located in the city of Denver. It closed each evening at eight o'clock, and is managed by Mrs. Hoff and her son-in-law and daughter, Mr. and Mrs. Schroeder. Shortly before eight o'clock on the evening deceased was shot, Mrs. Schroeder was counting the receipts of the cash register, preparatory to closing. The register was on a counter, about ten feet from the front door. Deceased had just finished a meal, and was sitting on a settee, talking with Mrs. Schroeder. At this time the defendant entered the cafe by the front door, with a revolver in his hand, and a large handkerchief hanging loosely around his neck. He closed the door, took a step forward, glanced hastily towards the rear of the room, raised the handkerchief over his face, covering all but his eyes, and turned facing the deceased and Mrs. Schroeder. Burrowes arose, and defendant ordered him to throw up his hands and get behind the counter. Burrowes replied: "No, I will not do it," when defendant discharged his revolver at him, inflicting a wound from which Burrowes died the next morning. Mrs. Schroeder and her mother rushed to the aid of Burrowes, seized the defendant, and, with the assistance of a customer and male help from the kitchen, held him captive until the arrival of the police.

Mrs. Hoff testified that she had noticed the defendant the evening before, shortly before eight o'clock, looking into the restaurant, in range with the cash register. Defendant

testified at the trial. ° He admitted the shooting, and his de-
fense was the motive with which he entered the cafe, his
claim being that he had entered to collect a sum of money he
had delivered to a young woman who, he thought, was din-
ing there with a male escort; that he carried the gun to
frighten the escort, or to use, in case he attacked him; that
deceased grappled with him as soon as he entered, and that
during the struggle the revolver was discharged, which was
caused by Burrowes seizing the defendant's hand in which
he held the revolver, and gripping it so firmly that it caused
its discharge. He denied that he had any intention of rob-
bing the cafe, or any one in it.

It is on this testimony that counsel for the defendant
bases his contention that the court erred in the particulars un-
der consideration. His claim is, that there being no testi-
mony that defendant demanded money, and no taking of
money, or attempt to take it, by force on his part, that his in-
tent in these respects can only be determined from the other
facts detailed, which, at most, are only sufficient from which
the inference might be drawn that his intent was to rob; but
there being no direct proof of such intent, the testimony from
which the inference of his intent could be drawn is circum-
stantial.

To what extent our statute inhibits the infliction of the
death penalty where the verdict is based upon circumstantial
evidence—that is, whether it applies to a case where some of
the material facts are established by circumstantial evidence
only, or where proof of the material facts depends upon cir-
cumstantial evidence alone, we need not determine, as the only
question we need consider at this time is, whether the testi-
mony on the subject of the intent of the defendant to rob,
is circumstantial. We do not think it is. The testimony of
eye witnesses, detailing the acts of the defendant, is certainly
direct evidence, and the inference which can logically be
drawn from such testimony is not circumstantial, but is based
upon direct proof. Intent is a question of fact, provable like

any other fact in issue in a criminal case. Here we have the testimony of eye witnesses to the effect that defendant entered the cafe with a revolver in his hand, with a handkerchief about his neck, just before closing time, when one of the persons in charge is counting the cash, looked about the room, masked with the handkerchief about his neck, and, when confronted by deceased, ordered him to throw up his hands and get behind the counter where the cash is being counted, and when he refuses, inflicts a mortal wound. We think this direct evidence is sufficient to establish an intent to rob, and that proof of such intent, from the facts narrated, does not in any sense rest upon what is termed circumstantial evidence. In other words, as applied to the case at bar, the testimony of eye witnesses detailing the physical acts of one accused of a crime, which tend to prove the motive or intent of the accused in committing them, is direct proof of such motive or intent, and not circumstantial evidence. Intent is an act or purpose of the mind rarely discoverable except by the acts of the person committing them; consequently, acts which tend to prove a specific intent are direct evidence of that intent. Our criminal code recognizes this to be the rule in prescribing how intent may be proved. It provides: "Intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." Sec. 1609 Rev. Stats. 1908.

The next proposition urged upon our attention by counsel for defendant is the alleged misconduct of the representatives of the district attorney, in arguing the case to the jury. It is unfortunate that questions of this character reach this court from time to time. We have frequently taken occasion to caution district attorneys against indulging in argument calculated to prejudice a defendant on trial before a jury, and in several instances have been compelled to reverse cases because of such conduct. District attorneys ought to realize that their duty on argument is confined to matters within the record, or fairly deducible therefrom, and that when they travel

outside this path, they not only undertake to do something which the duty of their office does not impose, but may inject into the record reversible error. A defendant is entitled to a fair and impartial trial, and when conduct on the part of a district attorney is calculated or tends to invade this right, serious questions are often presented on review. However, the conduct complained of in the case at bar we do not regard as of sufficiently serious import to constitute reversible error, although we desire it to be distinctly understood that we do not approve of it.

In his opening argument the deputy district attorney said: "Gentlemen of the jury, it is time for this series of crimes to stop. Men sent to the penitentiary seldom serve their sentences." At this point counsel for defendant objected to such argument as being improper, when the deputy district attorney retorted: "I thought you would object to that, Mr. Luthe." The trial judge then remarked: "There is no evidence in the case as to how long anybody stays there. It is proper to argue the probability, at least, but there is no evidence in the case showing what experience is, and therefore I do not think it ought to be commented on as experience." The deputy district attorney then replied: "Where the jury fixes the punishment, if your honor please, I think the common knowledge and experience of the jurors could be called in, if they have knowledge upon that subject, where they fix the punishment"; and, continuing his argument, stated to the jury that this was a good place to stop, upon the objection of counsel for defendant. "It seems to hurt. We have said that we would ask you for a hanging verdict on this case. Gentlemen, we sincerely do, because we think we are entitled to it, and we think the people of the state of Colorado are entitled to have this series of contemptible crimes stopped and then there is only one way to stop them, and that is to impose the death penalty."

The line of argument outlined by the above narration was in some respects improper. True, counsel for the people had a right to insist upon a verdict fixing the penalty at death, if,

from a review of the testimony, he believed, such verdict was proper; but counsel for defendant had a right to object to the assertion that men sent to the penitentiary seldom served their sentences, and when objection was interposed to this statement, the court should have sharply rebuked counsel for indulging in such argument, and should have promptly stopped him from proceeding along that line any further. That a person sent to the penitentiary would be released before serving his time had nothing whatever to do with any question involved, and it certainly was not proper to criticize counsel for defendant because he made an objection which he was entitled to make. We think, however, that this argument could not in any way have influenced the jury in returning the verdict they did. They would not have sentenced the defendant to be hanged instead of to the penitentiary, unless they believed from the testimony the crime of murder was committed under such circumstances that the death penalty should be imposed. Men sworn to perform their duty and render a verdict according to the testimony and the law as given them by the court, will not be influenced by such argument or statements on the part of the prosecuting attorney to which we have referred, to render a verdict other than that which the testimony and the law justify.

Counsel for defendant requested and obtained from the court an instruction to the effect that in order to find that defendant attempted to commit robbery, it must appear he intended, by force or putting in fear, to obtain money of some person, not belonging to him; that is, defendant was not guilty of an attempt to rob if he only sought to force some person to return to him money which belonged to him. The deputy district attorney, in closing his argument, stated that according to the statement of defendant he went to the restaurant to compel a young woman to whom he said he had given money, to return it to him, and, therefore, by his own admission, established that he was guilty of an attempt to commit robbery. This line of argument was somewhat extended, when counsel

for defendant arose and stated: "If the court please, I dislike very much to interrupt counsel, but there is one instruction given by the court, that is, to make it robbery, it must go by force, or putting in fear, to take the property of some other person not belonging to the defendant." The court ruled: "The instructions of the court are reduced to writing. They go to the jury-room, and the jury will consider them. The court will not instruct the jury verbally while counsel is arguing. Proceed." The deputy district attorney then continued his argument, to the effect, that if counsel for defendant, in his endeavor to get the law of the case before the jury, had drawn an instruction which the court had given inadvertently, by which the statutes of the state on the subject of robbery would be destroyed, he did not believe it could be urged at this time; that defendant, by his own statement, went to the restaurant for an unlawful purpose, to obtain by force money from the young woman, "and whether it was his money or whether it was the girl's money, it don't make any difference."

In view of the instruction given, this argument should not have been made, and should have been stopped by the court when objection was interposed. What the court then said, however, clearly advised the jury that the instructions given stated the law which should govern them in their deliberations, and which they would take to the jury-room. We think by this statement the jury understood that they should wholly disregard the argument on the subject under consideration with respect to what was said by the deputy district attorney before and after the objection was interposed.

Error is also assigned on one further excerpt from the argument of the deputy district attorney, in closing the case, which we do not think is of sufficient moment to require us to notice it, either in substance or in detail. Part of it was based on the defendant's confession, voluntarily made, shortly after the homicide. We think it is clear that the portion of the argument complained of could not possibly have influenced the jury in returning the verdict they did; and though some of it

was improper, it does not constitute reversible error. The testimony on the part of the prosecution so clearly and convincingly establishes the crime for which the defendant was convicted, that it appears certain none of the matters which we have considered of which the defendant complains injuriously affected his rights.

The final error assigned relates to the admission of testimony as rebuttal which counsel for defendant contends should have been offered in chief, or was, in effect, a reopening of the case on the part of the people. The order in which testimony shall be admitted rests largely in the discretion of the trial court, and unless it appears that such discretion was exercised to the prejudice of the defendant, such discretion will not be interfered with on review. It appears that no prejudicial error was committed by the court in admitting the testimony complained of.

The judgment of the district court is affirmed.

It is further ordered that the judgment of the district court be executed during the week commencing the twenty-fifth day of August, 1912.       *Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL not participating.

---

*On Petition for Rehearing.*

Mr. JUSTICE GABBERT delivered the opinion of the court:

A rehearing is requested upon the sole ground that under the law as it now stands, the defendant being under the age of thirty years at the time judgment was pronounced, can not be sentenced to death. This claim is based upon the provisions of chapter 195, Session Laws 1911, 563, which, it is urged, repealed *pro tanto* section 1624 Rev. Stats. 1908; that is to say, repeals or modifies the section regarding the infliction of

the death penalty so that a male person under the age of thirty years, convicted of murder in the first degree, cannot be sentenced to suffer death, but must be sentenced to imprisonment in the penitentiary.

The act does not purport to in any manner amend the law regarding penalties prescribed for the punishment of crimes. Its title and section 1 expressly state that it is an amendment to section 6255, Rev. Stats. 1908. It does not purport to repeal or modify any other section or statute, either directly or indirectly, but is limited to the one purpose indicated in its title and section 1. The section amended merely provided what male persons, as determined by age and the character of the offense, in the discretion of the court might be sentenced to imprisonment in the state reformatory, with the proviso that all males between the ages designated convicted of crimes involving imprisonment for life, should be sentenced to the penitentiary. The amendment changes the section relative to age, and in other respects, but its whole purpose, except on the subject of the discretion of the trial judge, is identical with the section it amends, namely, to provide what male persons, and none other, when the penalty is imprisonment, shall, or in the discretion of the trial court, may be imprisoned in the reformatory, with the proviso that male persons between the ages of sixteen and thirty years, convicted of crimes involving the penalty of imprisonment for life, or for murder in the first or second degree, or voluntary manslaughter, should be sentenced to imprisonment in the penitentiary, thereby depriving the trial judge of the discretion theretofore vested in him to sentence one convicted of a felonious homicide which did not involve life imprisonment, to the reformatory or the penitentiary. This, however, was not fixing a penalty for any of the degrees of felonious homicide mentioned, but merely providing that *male persons* convicted of such crimes were excluded from the operation of the act, and should be imprisoned in the penitentiary, when that was the penalty imposed.

The intent of a law is to be considered in its interpretation, and when that intent can be ascertained by permitted legal means, it must control.   We think that the title of the act and the limitations necessarily imposed by section 1 indicate without question that its purpose was merely to provide in what circumstances male persons convicted of crime, and sentenced to imprisonment, should, or might, be imprisoned in the reformatory or penitentiary.   Section 1624 *supra* provides that all persons, irrespective of sex, over the age of eighteen years, convicted of murder in the first degree, except those convicted on circumstantial evidence alone, should be sentenced to suffer death, if the jury fixed that penalty.   Certainly, it was never the intent of the legislature to provide that *male* persons between the ages of sixteen and thirty years, convicted of the crime of murder in the first degree, could not be sentenced to death, but should only be imprisoned in the penitentiary, and that a *woman* over the age of eighteen years, if convicted of a like offense, could be hanged.

The petition for rehearing is denied.

Decision *en banc*.

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL ont participating.