STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CAMILL MARTIN, PLAINTIFF IN ERROR.

Argued November 21, 1919—Decided March 1, 1920.

1. On the trial of an indictment where the prisoner was entitled to have a special panel served on him, sixteen jurors did not appear. *Held,* that the court properly ordered talesmen to be taken from the general panel.

2. In a trial for murder it was not error to allow the police surgeon, who saw the prisoner about the time of the arrest, to testify when called as a witness by the state on its principal case, that he made an examination of defendant's mental and physical condition and that he found him mentally normal.

3. A statement made by the prisoner was shown to be voluntary and not made under the influence of hope or fear. *Held,* that it was properly admitted in evidence.

4. On the second trial of a homicide case, the counsel for the state read to the jury a portion of the prisoner's testimony on the former trial, but made a frank and full offer to read all the testimony that the prisoner's counsel thought he ought to read; the latter pointed out no substantial omission. *Held,* that the reading of the testimony was proper.

5. It was proper to admit testimony of what was said out of the hearing and presence of the prisoner as to the sale of jewelry by the prisoner alleged to have been stolen by him when the person repeating the prisoner's alleged statements was acting as his agent and the conversation related solely to the sale.

6. A witness on a former trial before testifying in the present trial read his former testimony to refresh his recollection. *Held,* to be proper.

7. If the testimony on the part of the state was believed the prisoner killed decedent while the prisoner was committing robbery—*Held*, that it was not harmful to the prisoner to charge that the verdict must be guilty of murder or not guilty.

8. In his charge in a homicide case the judge told the jury that the Court of Pardons was higher than the Oyer and Terminer and might exercise the pardoning power of sovereignty as a court of pure mercy and grace, and that if the prisoner in a case of this character is sent to state's prison for life, that court might change the result of the verdict. *Held*, not harmful to the prisoner.

On error to the Essex County Court of Oyer and Terminer.

For the state, *Wilbur A. Mott (J. Henry Harrison* on the brief).

For the plaintiff in error, *Frank M. McDermit.*

The opinion of the court was delivered by

SWAYZE, J. Camill Martin was convicted of murder in the first degree and brings error. The first error assigned relates to the drawing of the jury. A special panel had been drawn and served upon the prisoner in accordance with section 82 of the Criminal Procedure act. Sixteen of the members of this panel did not answer when the names were called, but no objection was then made by the plaintiff in error and the sheriff proceeded to draw the jury for the trial of the case. Seven jurors were drawn when the sheriff announced that the special panel was exhausted. The court thereupon ordered the general panel to be sent for and the sheriff proceeded to draw talesmen from the general panel. There was objection upon the ground that the prisoner was entitled to have the names of the jurors for the trial of the case served upon him and that he could not be said to have had that statutory right when only thirty-two of the forty-eight appeared. The sheriff put the names of all the jurors on the general panel in the box and objection was made upon the ground that this led to calling over again jurors who had already been called out of the special panel. The court over-

ruled the objection. We think that the provisions of section 83 of the Criminal Procedure act justified this ruling. It enacts that "when the special panel or list of jurors served on a defendant shall be exhausted from any cause before a jury for the trial of the indictment shall be obtained, talesmen shall be taken from the general panel of jurors returned for the term at which the defendant is to be tried, if any remain," and then proceeds to provide for talesmen after the general panel is exhausted to be summoned from the bystanders. This language is broad and was evidently intended to prevent difficulties which had probably occurred prior to its enactment. The point taken on behalf of the plaintiff in error, that every juror on the special panel should be present in court when the case is called for trial, is contrary to the rulings in *Patterson* v. *State,* 48 *N. J. L.* 381 (at *p.* 384) ; *State* v. *Rosenthal,* 85 *Id.* 564; *affirmed,* 86 *Id.* 705. What the defendant is entitled to is a trial by an impartial jury and he evidently thought that such a jury could be secured notwithstanding the absence of the sixteen jurors, for he raised no objection. This assignment of error is therefore without force.

2. The police surgeon, who saw the prisoner about the time of his arrest, testified that he made an examination as to defendant's mental and physical condition and that he found him mentally normal, that in all respects his mentality was normal. After the evidence had been given, the defendant's counsel objected upon the ground that there was a presumption of sanity. The objection was not interposed at the proper time, but, assuming that the plaintiff in error was entitled to the benefit of the objection, it is still without force. The state was not obliged to prove the sanity of the prisoner, but it was not objectionable for it, when the doctor was on the witness stand, to ask him the question. It was entirely proper evidence and the time of its introduction was largely a matter of convenience and discretion.

3. The third point made is that the statement made by the prisoner was improperly admitted in evidence. We find ample proof that it was a voluntary statement and nothing

to suggest that it was made under the influence of hope or fear. This objection also fails.

4. This was the second trial of the case and the prosecutor of the pleas read to the jury some of the testimony of the defendant at the former trial. Objection was made that it was improper to read only a portion of the testimony. That was a valid objection, but the counsel for the state made a frank and full offer to read all the testimony that the prisoner's counsel thought he ought to read and counsel pointed out no substantial omissions. We think this objection also fails.

5. The accusation of the state was that the prisoner had committed the murder while engaged in robbing a jeweler and dealer in precious stones. The state offered evidence of the sale of some of the articles to a bootblack called Tony, by a man named Jesse Jerardo and evidence was offered of the conversations between Tony and Jerardo with reference to the sale, not in the presence and hearing of the prisoner. This was objected to as hearsay. It appeared, however, and was uncontradicted that Jesse Jerardo was acting as the agent of the prisoner to make the sale and the conversations introduced related solely to the negotiations for the purchase by Tony. This comes well within the ruling of *State* v. *Fiore*, 85 *N. J. L.* 311. The objection is not valid.

6. The hat and coat of the prisoner were admitted in evidence. The only objection was that they were not sufficiently identified and had not been continuously in the custody and control of the officers. We find no force in this suggestion. There was uncontradicted evidence with reference to the identity of the clothing.

7. We see no objection to the introduction in evidence of the revolver (*Exhibit S*-4).

8. It was proper to exclude the testimony of the prisoner's sister as to his statement of where he was going on the night of the murder. The conversation, according to her story, was at a time subsequent to the murder and necessarily so if the effort of the prisoner to prove an alibi was to have any weight.

9. A witness, Giordano, reread his testimony at the former trial from a printed or manuscript copy, shortly before he went on the witness-stand in the present trial, to refresh his recollection. The prosecutor of the pleas seems to have referred to it in his summing up to the jury, and complaint is made that the court failed to instruct the jury to disregard the prosecutor's comment as to the right of Giordano to use the record to refresh his memory. We see no force in this objection. It is not only every-day practice, but it has the specific approval of this court in *Myers* v. *Weger*, 62 *N. J. L.* 432 (at *p.* 441), and the expressions of this court in that case were subsequently approved in the case of *State* v. *Dougherty*, 86 *Id.* 525, and *State* v. *Kwiatkowski*, 83 *Id.* 650.

10. The stress of the argument was upon the charge of the court that the verdict must be murder in the first degree, murder in the second degree, or not guilty. The point is made that the judge thereby excluded from the jury the right to find the prisoner guilty of manslaughter. The accusation of the state was that the murder was committed while the prisoner was engaged in committing a robbery. If the jury believed that evidence, the door was not open to find the prisoner guilty of manslaughter. If they disbelieved it, they must necessarily acquit. It is said that he acted in self-defence, but self-defence does not excuse or mitigate the offence in a case of this character. *State* v. *Agnesi*, 92 *N. J. L.* 53; *affirmed, Id.* 638.

11. The court told the jury that the Court of Pardons was a court higher than the Oyer and Terminer and might exercise the pardoning power of sovereignty as a court of pure mercy and grace, and if a defendant in a case of this character is sent to state's prison for life that court might change the result of the verdict. We think this remark was unfortunate, but we cannot say that the judge committed legal error or went beyond his right of comment. Nor can we say that harm was done to the prisoner. The remarks of the judge were quite unnecessary since we suppose that every juryman must know of the existence of the Court of Pardons.

and that it might change the result of their verdict by exercising mercy or grace.

12. There is nothing in the objection that the court refused to charge more completely as to the testimony of Dr. Clark, for at the part of the charge complained of the court was merely stating the claim of the state and it would have been improper to state as a part of that claim something which the state did not concede. The prisoner had the benefit of his own statement at the former trial, that he acted in self-defence.

We find no substantial cause for reversal, and the judgment is affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, JJ. 14.

*For reversal*—None.