THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT SUKDOL, Plaintiff in Error.

*Opinion filed October 28, 1926.*

1. CRIMINAL LAW—*when child may be exhibited in court room for identification in prosecution for taking indecent liberties.* In a prosecution for taking indecent liberties with a child of the age of twenty-three months, where witnesses have testified that they saw the defendant carrying a child a few minutes before the assault, the child assaulted may be brought into the court room, in the presence of the jury, to enable the witnesses to identify the child as the one they saw the defendant carrying, where the exhibition is made in an orderly manner.

2. SAME—*jury should not be instructed as to provisions of the Parole law.* The Parole law has no application to criminal trials, and it is error for the court to instruct the jury in detail as to when a prisoner may be paroled after an indeterminate sentence to the penitentiary, but the error will not require a reversal of a conviction which is sustained by the evidence.

3. SAME—*court, assisting confused witness, should not express opinion as to his testimony.* Where a witness of tender years becomes confused on the stand it is proper for the court to ask a question to give the witness an opportunity to make his testimony clear, but the court should not express an opinion as to whether or not there is any contradiction in the witness' testimony.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

ARNOLD M. EHRLICH, and ALFRED G. BRILE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and G. E. NELSON, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Albert Sukdol, was convicted in the criminal court of Cook county of taking indecent liberties with Anita Wickert, a female child of the age of twenty-three months. Contending that the court admitted improper evidence, rejected proper evidence, gave improper instructions to the jury and made prejudicial remarks, he prosecutes this writ of error to reverse the judgment.

The child lived with its parents at 3623 South Sacramento avenue, Chicago. About five o'clock in the afternoon of August 23, 1925, the mother of the child missed it from the front yard, where it had been playing. After several hours' search the child was located at the Cicero avenue police station. The child's bloomers were missing, the lips of its vagina bruised and the hymen ruptured. When dressed by its mother in the afternoon the child was in good health and had no bruises on its body. When the child disappeared she wore a dress of red material dotted with white, her bloomers being of the same material. The following day these bloomers were found in a grove of trees at Ogden and Cicero avenues. The Wickert home is more than three miles from Tancil's grove, where the bloomers were found. About six o'clock in the evening two men, Frank Maserak and Felix Kosinski, and a fourteen-year-old boy, Frank Masjewski, were standing on the sidewalk in front of Tancil's grove and saw plaintiff in error walking along the street carrying a child in his arms. He was

staggering and as he approached them the child knocked his hat from his head. They noticed that the child wore a dress of red material dotted with white but paid no particular attention to it at the time. About fifteen minutes later they saw the child standing on the sidewalk a short distance from them. It was crying and holding its hand on its side. The three men went to the child and tried to learn its name, but the child could not make itself understood and a man who was passing by took it to the police station. Maserak, Kosinski and Masjewski started towards some sheds in the grove and saw plaintiff in error coming out of a shed. He was buttoning his trousers. They followed him for about two blocks. Then Maserak left to notify the police while the other two continued to follow plaintiff in error. Shortly afterwards Maserak returned with the patrol wagon and plaintiff in error was placed under arrest and taken to the Cicero avenue police station. The police questioned the witnesses and talked with the parents of the child. On the trial Maserak, Kosinski and Masjewski admitted that they did not tell the police that night that they had seen plaintiff in error carrying the child toward Tancil's grove. The parents were not sufficiently satisfied that plaintiff in error was responsible for the condition of their child to make a formal complaint against him, so he was discharged. The following day, when the bloomers were found, the father made formal complaint against plaintiff in error and he was re-arrested.

Plaintiff in error testified that he is a bricklayer's helper; that he had been regularly employed but that he was not working August 23; that he remained at home until two o'clock in the afternoon, when he went to the home of a friend; that he remained there until about three o'clock, when he and his friend went to a near by saloon; that they remained there drinking until about five o'clock; that at five o'clock he boarded a street car on Twenty-sixth street and rode south to Springfield avenue, where he left the car

and went to a cigar store, where he bought a package of cigarettes; that after he had made this purchase he boarded another street car and rode to Cicero avenue; that he walked to Tancil's grove to answer a call of nature; that when he came out he met two young men; that he walked down the street and shortly thereafter was arrested; that he asked why he was being arrested but was not told; that when he reached the station they showed him the child and asked him whether he was acquainted with it; that he said he had never seen the child before, and thereupon he was placed in a cell. He testified further that he did not carry the child along the street near Tancil's grove and that he did not assault it, and that before the day of his arrest he had never seen the child so far as he knew.

Near the close of his case the State's attorney asked the mother of the child to bring it into the court room for the purpose of identifying it as the child seen in the arms of plaintiff in error. While the mother stood in the court room with the child in her arms, Maserak, Kosinski and Masjewski were individually asked whether the child held by Mrs. Wickert was the child they saw carried by plaintiff in error about six o'clock P. M. August 23, 1925, near the corner of Cicero and Ogden avenues, Chicago. Each answered that it was the same child. Plaintiff in error contends that it was error to thus exhibit the child to the jury, but we see no merit in the contention. The exhibition seems to have been made in an orderly manner, and it appears to have been necessary in order for the jury to know that the child assaulted was the one seen in the company of plaintiff in error.

Plaintiff in error called Lieutenant McGrath and interrogated him concerning the conversation the latter had at the station with Maserak, Masjewski and Kosinski. He was asked whether the witnesses told him at the time of that conversation that they had seen plaintiff in error carrying the child. An objection to the question was sustained.

He was then asked whether he asked the witnesses this question: "Did you see this man carrying a child before you saw him in the grove?" An objection to this was sustained on the ground that no foundation had been laid for it. All the witnesses had admitted that on the night of the arrest they did not tell the officers that they had seen plaintiff in error carrying the child before they saw him coming from the grove, and so the sustaining of the objection to the first question did not harm plaintiff in error. His counsel argue, however, that, notwithstanding the admission of the witnesses that they did not tell the officers that they had seen plaintiff in error carrying the child, they explained their failure to give this information by stating that they answered only such questions as were put to them. It was therefore important to show whether the police asked them directly whether they saw plaintiff in error with the child before they saw him coming from the grove. The court erred in sustaining the objection to this question, but the jury had the benefit of the information that these witnesses did not tell the officers all they told when testifying on the trial, and it does not appear that the error could have affected the verdict.

The court gave to the jury certain instructions requested by the prosecution and the defense and also gave the following instruction on his own motion and in his own handwriting:

"You are instructed that the penalty in this case, if the defendant is found guilty by you, is an indeterminate sentence in the penitentiary of from one to twenty years. You are further instructed that such a penalty means, that the defendant after serving one year of such sentence has the right to apply to the parole board of the State of Illinois for release on parole, and such board has the right to release him on parole at that time or at any subsequent time within the period of said twenty years."

Why the court on its own motion gave this instruction does not appear. It had no place in the record and did not give the jury any information that helped them determine the question of fact submitted for their determination. They had nothing to do with the punishment of plaintiff in error if they found him guilty. The Parole law has no application whatever to criminal trials and it was error for the court to give the instruction. (*People* v. *Murphy*, 276 Ill. 304.) The error is not, however, of the character which requires a reversal of the judgment.

It is next contended that the judgment should be reversed because of the prejudicial remarks of the trial court. During the cross-examination of Masjewski the following occurred:

Q. "Did they [the police] suggest to you at that time to say that you saw this man carrying the baby?

A. "Yes.

Q. "After they told you at that time to say that you saw that man carrying the baby did they ask you to make that statement?

A. "Yes.

The court: "Wait a minute. I am not going to have any contradiction here with boys on the stand at all. He didn't say that before, and that boy didn't mean it either. [To the witness:] Did you tell that policeman that you saw this man with the baby or did the policeman tell you that you saw him?

A. "I told them."

This witness was fourteen years old and was in the fifth grade at school. He was examined and cross-examined at great length. In his testimony there are no material contradictions. It is apparent from an examination of his testimony that he was confused when he answered the questions suggesting that the police suggested to him that he say he saw plaintiff in error carrying the baby near Tancil's grove. While it was proper for the court to ask the ques-

322–35

tion which gave the boy an opportunity to make his testimony clear, the court should not have expressed an opinion as to whether there was any contradiction in the boy's testimony. The error, however, was harmless.

This is an unusual case and the evidence shows a revolting and unnatural crime. We have examined the record with care and are convinced that plaintiff in error has had a fair trial. While no one saw him commit the crime of which he has been convicted, yet the circumstances pointing to his guilt are so strong as to leave in the mind no doubt of his guilt.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*