# Richmond

WALTER C. COWARD V. COMMONWEALTH OF VIRGINIA.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*W. L. Devany, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Walter C. Coward was tried upon the charge of driving an automobile while under the influence of intoxicants. The jury returned a verdict finding him guilty and fixing his punishment at three months in jail and a fine of $100. The court entered judgment in accordance with the verdict.

Upon his direct examination the accused testified that he was not under the influence of intoxicants, but had

drunk four bottles of 3.2 per centum beer at a restaurant; that he went directly from the restaurant to Wright's Parking Station to try out an automobile; that he took the automobile he was driving without permission and was driving it around the block to test it when he was arrested on the charge upon which he was tried; and that he was going to buy a second-hand car and had on several occasions tried out automobiles looking to the purpose of purchasing one.

Upon cross-examination he was asked whether he was a man of means and prepared financially to purchase an automobile. The accused objected to answering this question, but the court required him to answer. His answer was that he was not a man of means but had an interest in a wholesale tobacco supply store.

After the jury had retired to its room, it returned and inquired of the court "what time the defendant would get off while he was confined in jail." To this inquiry the court replied: "The law is that the jailor shall also keep a record of each convict, and for every month that any convict appears by such record to have faithfully observed the rules and requirements of the jail while confined therein, and not to have been subjected to discipline for violation of same, there shall, with the consent of the judge, be deducted from the term of confinement of such convict ten days."

Thereupon the accused moved the court to declare a mistrial because it had made this reply to the inquiry of the jury.

The accused makes two assignments of error: (1) The court erred in requiring the accused to answer the Commonwealth attorney's question whether he was a man of means and able to buy an automobile. (2) The court erred in instructing the jury as it did in its reply to the jury's inquiry.

He said that he had taken the automobile, which he was driving when arrested, without permission of the

owner but with the intention of trying it out as a possible purchaser.

There was no intention to prejudice the jury by showing that he was a man of wealth. If he was so circumstanced that he could not buy a car at all that fact had a direct bearing upon the truthfulness of his statement. It manifestly bore upon his credibility and so was plainly competent.

The second assignment of error presents a more serious question. When the jury inquired of the court "what time the defendant would get off while he was confined in jail" it could have had but one purpose in mind. It wanted to know the actual time of his confinement for any sentence which might be imposed. It had, by statute, wide discretion. Driving an automobile while under the influence of intoxicants is a misdemeanor punishable "by a fine of not less than one hundred dollars nor more than one thousand dollars, or confinement in jail not less than thirty days nor more than twelve months, or both for the first offense." Code, section 4675(25), Acts 1932, page 109, chapter 103.

The consideration which might be extended to a prisoner for good conduct was a matter which did not fall within its province.

Under an act of the General Assembly, approved March 11, 1932, Acts 1932, page 152, chapter 136, a prisoner whose conduct is good is entitled to have deducted from each month during which the sentence runs, fifteen days—that is to say, one sentenced to twenty years' confinement would serve only ten years. A jury which has been instructed as to this statute might be of opinion that ten years' confinement was just punishment for a proven crime. In order to impose it a twenty year sentence would be necessary. Plainly such a verdict would be indefensible.

In *State* v. *Satcher*, 124 La. 1015, 50 So. 835, it appears that a negro was sentenced, on a charge of murder, to life imprisonment. The judge told the jury that such a

sentence, by good behavior, could be reduced to fifteen years. It was held that the prisoner was not prejudiced. If the jury thought that the maximum punishment provided for by law should be inflicted, he was not, but that is a matter of guesswork.

In *State* v. *Martin*, 94 N. J. Law, 139, 109 Atl. 350, 352, the court told the jury, "that the Court of Pardons was a court higher than the Oyer and Terminer, and might exercise the pardoning power of sovereignty as a court of pure mercy and grace, and, if a defendant in a case of this character is sent to state's prison for life, that court might change the result of the verdict. We think this remark was unfortunate, but we cannot say that the judge committed legal error, or went beyond his right of comment. Nor can we say that harm was done to the prisoner. The remarks of the judge were quite unnecessary, since we suppose that every juryman must know of the existence of the Court of Pardons, and that it might change the result of their verdict by exercising mercy or grace." On appeal it was held that such a charge should not have been given but it did not constitute reversible error.

There the Court of Pardons might act if it saw fit. In the instance case, by an established rule, sentences are definitely diminished.

In *People* v. *Sukdol*, 322 Ill. 540, 153 N. E. 727, 729, it appears that a trial judge told the jury: "You are instructed that the penalty in this case, if the defendant is found guilty by you, is an indeterminate sentence in the penitentiary of from one to twenty years. You are further instructed that such a penalty means that the defendant, after serving one year of such sentence, has the right to apply to the parole board of the State of Illinois for release on parole, and such board has the right to release him on parole at that time, or at any subsequent time within the period of said twenty years." On appeal, the court said: "Why the court on its own motion gave this instruction does not appear. It had no place

in the record, and did not give the jury any information that helped them determine the question of fact submitted for their determination. They had nothing to do with the punishment of plaintiff in error, if they found him guilty. The Parole Law (Smith-Hurd Rev. St. 1925, chapter 38, section 801 *et seq.*) has no application whatever to criminal trials, and it was error for the court to give the instruction. *People* v. *Murphy*, 276 Ill. 304, 114 N. E. 609. The error is not, however, of the character which requires a reversal of the judgment."

Here again reference was made to a parole board which might reduce the sentence, and not to a definite diminution which followed good behavior.

In *People* v. *Murphy*, 276 Ill. 304, 114 N. E. 609, 616, counsel for the State, in his argument, commented upon the possibilities of the parole law. The court said that he should not have done it but was of opinion that such comment did not influence the jury, its language being: "We do not believe the remarks figured in fixing the penalty of plaintiff in error, or we would not hesitate to reverse the judgment on account of this error."

In our case the inquiry of the jury could have had no other purpose than the ascertainment of the time of actual confinement which would be endured upon such sentence as it might impose. That is to say, it must have been guided by information thus obtained "in fixing the penalty."

In *State* v. *Junkins*, 147 Iowa 588, 126 N. W. 689, 690, it appears that the accused was convicted of murder in the first degree. The prosecuting attorney urged that the death penalty be inflicted, and in the course of his argument said that punishment by confinement in the penitentiary might be broken by pardon or parole. The court said: "The argument was one which would better have been omitted, and we can conceive of circumstances under which, especially where the case involves other doubtful features, we would be disposed to hold it prejudicial error for the trial court to permit it, but we

are united in the view that under the record there presented there is no reasonable probability that the verdict would have been otherwise, had the appellant's objection to the argument been sustained."

In *People* v. *Smith,* 206 Cal. 235, 273 Pac. 789, 790, the defendant was charged with embezzlement. The court told the jury that restoration authorized the court in its discretion to mitigate punishment. A number of objections were urged to this instruction. The court said:

"The vice in the instruction here complained of is that the intimation or promise extended to the jury, that leniency in the punishment might be extended to the defendant by the court, had a tendency to draw the attention of the jury away from the evidence and overcome reasonable doubt, and thus to induce the jury to reach a verdict on ulterior considerations. On the facts in this case the jury might have entertained a reasonable doubt as to the existence of all the necessary elements of the felony charged against the defendant and acquitted him but for the erroneous instruction."

In *Wechter* v. *People,* 53 Colo. 89, 124 Pac. 183, 185, the district attorney, asked that the accused be punished with death and said: "Men sent to the penitentiary seldom serve their sentences." The appellate court said that the trial court should have rebuked the district attorney for that statement although it held that the error there was harmless.

To the same effect is a later case in that State, *Hillen* v. *People,* 59 Colo. 280, 149 Pac. 250.

In *Pittman* v. *State,* 84 Ark. 292, 105 S. W. 874, it appears that a young boy was being tried for murder. The court told the jury that if convicted he might be sent to a reform school or he might be sent to the penitentiary. That the Arkansas statute permitted. This was held to be error and that case was reversed.

To the same effect is *Bird* v. *State,* 154 Ark. 297, 242 S. W. 71, 72. There a young boy was being tried for murder. The court said: "So, here, it was erroneous to tell

the jury that appellant would be sent to the reform school, and not to the penitentiary, for the statement to that effect, sanctioned by the court, may have influenced the jury in returning a verdict of guilty; whereas appellant was entitled, under the law, if convicted, to have his punishment assessed as it would have been if it had been known he would suffer it in the penitentiary." See also, *Dingus* v. *Com.*, 153 Va. 846, 149 S. E. 414.

■■ The net result is this: It is error for the court, by its instructions, or for counsel in argument, to tell the jury that its sentence imposed and confirmed may be set aside or cut down by some other arm of the State. It is their duty to inflict such punishment as appears to be just and proper and this is the full measure of their duty. It is also true that courts often hold that this admitted error, if not harmless, is insufficient to sustain a reversal. It is harmless where a minimum sentence is imposed and it is harmless in murder cases when the sentence is death, and generally it is of little importance where the court in itself fixes the penalty.

■■ The power of the Governor to pardon should not be commented upon in argument and it is plain error to tell the jury that under an established rule and in the ordinary course of events such sentence as it may impose will not be suffered, but will be substantially diminished. In the instant case this is what the jury wanted to know, and its purpose in seeking information is too plain for argument. These jurors should have been told that it was their duty, if they found the accused guilty, to impose such sentence as seemed to them to be just. What might afterwards happen was no concern of theirs. In its failure to do this we think the trial court was in error. For this reason its judgment must be reversed, and it is so ordered.

*Reversed.*

HUDGINS, J., dissenting.