COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Bumgardner
Argued at Richmond, Virginia


WILLIAM JOHN BARTZ, JR.

                                        MEMORANDUM OPINION* BY
v.    Record No. 1374-98-2              JUDGE SAM W. COLEMAN III
                                              JUNE 29, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                   Dixon L. Foster, Judge Designate

              Elwood Earl Sanders, Jr., Appellate Defender
              (Public Defender Commission of Virginia, on
              briefs), for appellant.

              Robert H. Anderson, III, Assistant Attorney
              General (Mark L. Earley, Attorney General;
              Richard B. Campbell, Assistant Attorney
              General, on brief), for appellee.


     A jury convicted William J. Bartz, Jr., of rape, sodomy, and

abduction of CT, a thirteen-year-old girl.  The jury fixed his

sentences at ten years for rape, twenty years for abduction and

ten years for sodomy, which are to run consecutively.  On appeal,

Bartz contends that the trial court erred (1) in not setting aside

the verdicts because the testimony of the complaining witness was

inherently incredible, (2) in not allowing a defense witness to

testify about the complaining witness's bad reputation in the

community for truth and veracity, (3) in admitting hearsay

--------------------------------------------------

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

evidence of the complaining witness's long-delayed prior complaint, and (4) in instructing the jury that they could not run sentences concurrently but the court could.  Finding no reversible error, we affirm.

<u>BACKGROUND</u>

"Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give to it all reasonable inferences fairly deducible therefrom."  <u>Higginbotham v. Commonwealth</u>, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

So viewed, the evidence proved that Bartz had resided with CT's family since 1992 after CT's mother deserted the family. CT's father worked from 3:00 p.m. to 11:00 p.m., during which time Bartz watched CT and her brother until their father returned home. One afternoon in the winter of 1992, when CT was thirteen, she came home from school and encountered Bartz clad in only a tee shirt and underpants.  After leaving and returning to the house five minutes later, she again encountered Bartz standing at the top of the stairway wearing nothing but his underpants and boots. Bartz rapidly came down the stairs, grabbed CT by the hair, and dragged her down another set of stairs to the basement laundry room where he threw her against a freezer, and at knifepoint raped and sodomized her.

After Bartz left the laundry room, CT crawled to her father's basement bedroom and got his handgun.  She then crawled to the

-

basement stairs waiting for Bartz to return.  When Bartz returned to the top landing, CT shot at him but she did not believe she hit him.  CT could not find evidence that the bullet had struck inside the house.  However, she testified that the front door was open and she could see the sky behind Bartz.

In an effort to conceal the incident, CT cleaned the gun, disposed of the spent cartridge, sprayed air freshener to cover the gunpowder smell, and threw away the ripped clothing she had been wearing when Bartz attacked her.  Although she bled profusely for a day and a half, CT never sought medical treatment.  CT did not tell her brother what had happened when he returned later that day, but the following day she told him to lock all the doors and windows and to watch for Bartz.  CT testified that she did not see Bartz again but that he returned to the home to pick up his personal belongings.  When CT's father asked about Bartz, she told him that Bartz had found another place to live.

CT told no one about the incident until one year later, after having had a nightmare about Bartz raping her.  CT told her cousin, who in turn told her own mother, who later reported it to CT's estranged mother.  Two years after the attack, CT disclosed some, but not all, of the details about the incident to her father.  CT feared that if her father knew the truth he would physically attack Bartz and get himself into trouble.  When CT ultimately revealed aspects of the incident to her father, he became very angry but agreed not to call the police.  Eventually,

-

CT's mother informed the police, and in December 1996, Bartz was indicted for the crimes.

In giving the police details about the offense, CT reported that Bartz was circumcised, that he had a scar on his lower back, and that he held the knife to her throat with his right hand. At trial Bartz conceded that he was circumcised, that he had a scar on his back, and that he was right-handed. Bartz told Officer Smith that he was never shirtless or otherwise undressed around CT or her brother.

Karen Brown, a licensed clinical social worker, testified that CT had symptoms consistent with post traumatic stress disorder (PTSD) which is frequently associated with traumatic sexual assault. She noted that one of the four major symptoms of PTSD is that "the individual would try very hard to avoid anything that would have to do with the memory of [the trauma], and they might do that by avoiding certain people or situations or telling anyone about it." She further testified that CT's symptoms were inconsistent with having been caused by her mother's desertion of the family. She testified that frequently victims of traumatic sexual assault are reluctant to disclose the incident.

> Often the victims are afraid that they're
> going to be hurt again or they are afraid
> that something will happen to their family
> if they tell. Often there's a sense of
> guilt or self-blame. A feeling of betrayal
> . . . if they were close to the person and
> [a] feeling that they can't trust anyone
> else. And just generally an avoidance of
> wanting to talk about it.

-

Bartz denied the allegations and presented evidence that he was too physically disabled to have committed the acts described by CT.  CT testified that she never noticed any of Bartz's physical limitations.  The evidence showed that despite Bartz's alleged limitations, he could get in and out of his jeep which had heightened suspension, he hunted, and he had started a business clearing lots and cutting trees.

Jerry Michael Davis testified for the defense, without objection, that CT's reputation for truthfulness and veracity was "not very good at all."  Bartz then called Melissa Davis.  The Commonwealth objected, and the defense proffered that she would testify that CT's reputation in the community for truthfulness and veracity was poor.  The following dialogue ensued.

> [COMMONWEALTH]: Judge, it's not -- you know, I haven't objected up to this point.
>
> [THE COURT]:  You didn't make any objection before, but I think it's a proper objection.
>
> [COMMONWEALTH]:  You can't bring a witness's credibility -- you can't challenge a witness that way.  It's not proper.
>
> [DEFENSE]:  Well, I think it's proper or I wouldn't have done it.  Now, if I've made a mistake, and the Court wants to overrule me, that's fine, but I certainly don't bring witnesses in here just for the heck of bringing witnesses in here.  I think the court knows that.
>
> [COMMONWEALTH]:  Character, general character evidence is only admissible regarding the defendant to bolster his

-

character.  You can't just -- you can't do that with a witness in a case.

[DEFENSE]:  All right, I'll withdraw this witness.

[COMMONWEALTH]:  Thank you.

[THE COURT]: All right, you can step down. Next witness.

Later, during sentencing deliberation, the jury asked a question of the court:

[JURY FOREMAN]: [D]oes [the sentence] have to be added together, twenty, plus five, plus five, plus five, or can it be concurrent, or do we have to concern ourselves with that?

[THE COURT]:  You don't have to concern yourselves with that.  All you have to do is to -- I'll tell you this:  That any sentence you impose, and I think probably I should tell you this, any sentence that you impose . . . will run . . . consecutively.  They will not run concurrently.  Now, the Court . . . does have a right to order that they run concurrently, but the jury does not. . . .  So what you have to do is impose a sentence in each of the particular cases or whatever you think is appropriate for that particular offense, and those sentences that you bring back and present to the Court will . . . run consecutively.  The Court has the right to change it, but the jury does not have the right to say that they run consecutively or concurrently.

The judge then asked if counsel had any questions or any problems with his answer.  Both counsel responded that they did not.

-

ANALYSIS

Credibility of the Complaining Witness's Testimony

The decision of a trial court will not be disturbed unless plainly wrong or without evidence to support it.  See Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982).  Where the uncorroborated testimony of a complaining witness is "inherently incredible, or so contrary to human experience or to usual human behavior as to render it unworthy of belief" then the evidence is insufficient to sustain a verdict of guilty beyond a reasonable doubt.  Willis & Bell v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 812-13 (1977).  Bartz asks us to find that CT's testimony was inherently incredible as a matter of law.  We do not find CT's testimony incredible.

"Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify."  Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993).

> [O]ur examination of the evidence is
> confined to inquiring whether the jury was
> warranted, as reasonable [people], in
> finding the accused guilty under the
> applicable rules of law and not what action
> we might have taken as members of the jury.
> In testing the credibility and weight to be
> ascribed to the evidence, we must give trial
> courts and juries wide discretion to which a
> living record, as distinguished from a
> printed record, logically entitles them.

-

Bradley v. Commonwealth, 196 Va. 1126, 1135-36, 86 S.E.2d 828, 834 (1955).

Where a complaining witness offers a credible explanation for delay in reporting a sexual assault, his or her failure to immediately report the offending incident does not render the victim's testimony inherently incredible as a matter of law. See Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991). Here the record, in particular the explanation of CT and the testimony of the expert witness, offered ample justification for the reporting delay. CT, a thirteen year old, feared her father's reaction and feared Bartz's retaliation. Additionally, the jury could have inferred from the expert testimony that CT was reluctant to share her trauma with those around her, as is common among sexual assault victims who suffer from PTSD. See, e.g., Woodard v. Commonwealth, 19 Va. App. 24, 28, 448 S.E.2d 328, 330 (1994) (finding a sexual assault victim's delay in reporting her attack "consistent with the all too common circumstances surrounding sexual assault on minors -- fear of being disbelieved by others and threat of further harm by assailant"). In addition, we find that unwillingness on the part of CT's family to report the incident has no bearing upon CT's credibility.

Bartz further claims that CT was not worthy of belief because she gave inconsistent testimony. At trial, CT testified that Bartz's departing words were "Ouch, ouch" and "You shot

-

me."  Bartz claims that at the preliminary hearing she testified he had said, "Have a nice life."  In fact, at the preliminary hearing CT testified that Bartz stood at the top of the stairs and said "Have a nice life," after which she stated that she shot at him and he ran out the door yelling "You shot at me."  Contrary to Bartz's argument on appeal, this was not a material inconsistency that calls into question the credibility of CT's entire testimony.  Furthermore, the fact that CT had difficulty recalling the date of the incident does not persuade us that CT fabricated her testimony.  Neither the account of what occurred nor the inconsistencies in CT's testimony render her testimony inherently incredible.  Accordingly, we find the evidence sufficient to support the jury's verdict.  See Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984).

Impeachment Evidence

Bartz contends the trial court erred by prohibiting the defense from calling a witness to testify about CT's reputation for truth and veracity.  We find no reversible error because the trial judge did not prohibit the witness from testifying, rather defense counsel withdrew the witness.

The trial court did not rule that the witness could not testify.  Prior to calling Melissa Davis, defense witness Jerry Michael Davis testified, without objection, that CT's reputation for truth and veracity in the community was, "not very good at all."  When the defense called Melissa Davis and the

-

Commonwealth objected, the defense proffered that she would also testify that CT had a poor reputation for truth and veracity.

Evidence by one qualified to so testify that a witness's general reputation for truth and veracity in the community is bad is a permissible form of impeaching the witness's credibility.  See Clinebell v. Commonwealth, 235 Va. 319, 323-24, 368 S.E.2d 263, 265 (1988).  Although the trial judge expressed a view that the foregoing method of impeaching a witness was not proper, he did not rule that the witness could not testify.  After some discussion between counsel and the judge about the propriety of such impeachment evidence, defense counsel capitulated in the judge's stated view and withdrew the evidence.  Had defense counsel not capitulated, we can only speculate to what extent the judge may have gone in researching the issue.  The contemporaneous objection requirement of Rule 5A:18 requires that objections be specifically stated so trial courts have the opportunity to maturely consider issues and correct problems there rather than encourage unnecessary delays. Here defense counsel, by withdrawing the witness, did not put the judge in the position of ruling on the Commonwealth's objection.  Accordingly, the trial judge did not make an erroneous ruling.

### Evidence of the Prior Complaint

Bartz contends the trial court erred by admitting evidence of CT's prior complaint made two years after the alleged sexual

-

assault.  Bartz objected to the evidence as hearsay.  He also claims the court erred by admitting the evidence without determining that a justifiable reason existed for the delay.

> Notwithstanding any other provision of law, in any prosecution for criminal sexual assault . . . the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness.

Code § 19.2-268.2.  The Supreme Court and this Court have recognized that it is neither uncommon nor without justification for victims to delay reporting incidents of sexual assault.  See Broaddus v. Commonwealth, 126 Va. 733, 748, 101 S.E. 321, 325-26 (1919); Willis & Bell, 218 Va. at 563, 238 S.E.2d at 812-13 (recognizing that there may be a credible explanation for such delay); Terry v. Commonwealth, 24 Va. App. 627, 634, 484 S.E.2d 614, 617 (1997); Corvin, 13 Va. App. at 299, 411 S.E.2d at 237; Woodard, 19 Va. App. at 28, 448 S.E.2d at 330.  Delayed complaints of sexual assault are admissible for the purpose of corroborating the testimony of a complaining witness where the delay is credibly explained, or consistent with the circumstances.  See Terry, 24 Va. App. at 635, 484 S.E.2d at 618; Woodard, 19 Va. App. at 27-28, 448 S.E.2d at 330.

Whether the delay in reporting is sufficiently explained or justifiable to admit the complaint into evidence is committed to the sound discretion of the trial judge.  See Terry, 24 Va. App.

-

at 634-35, 484 S.E.2d at 617-18; Woodard, 19 Va. App. at 28, 448 S.E.2d at 330.  Here, CT explained her reasons for delaying in reporting the incident to her father.  The trial judge did not abuse his discretion in determining that CT's youth at the time of the offense, the nature and circumstances of the offense, and the reasons that CT gave for the delay were sufficient to support the trial court's ruling.

### Response to the Jury's Question

Although he concedes that he did not preserve the issue for appeal, Bartz asks us to reverse his conviction because the trial judge instructed the jury that the court could run sentences concurrently.  In support of his argument, Bartz cites Coward v. Commonwealth, 164 Va. 639, 646, 178 S.E. 797, 799-80 (1935), in which the Supreme Court addressed whether a trial court could instruct the jury about the effect of a good time credit on their sentence.

> It is error for the court, by its instruction . . . to tell the jury that its sentence imposed and confirmed may be set aside or cut down by some other arm of the State.
>
> *    *    *    *    *    *    *
>
> [I]t is plain error to tell the jury that under established rule and in the ordinary course of events such sentence as it may impose will not be suffered, but will be substantially diminished.

Id.  Although the Supreme Court has held it error to instruct the jury on how their sentence might be reduced for good

-

behavior credit, we have not considered whether a judge errs by explaining that a jury may not direct that their recommended sentences run concurrently but the judge may so order.

Because we find that Bartz failed to make a contemporaneous objection to the court's instruction to the jury, we are barred by Rule 5A:18 from considering the merits of the question on appeal.  From our review of the record, Bartz has shown no good cause for failing to object, and it is not necessary that we address the issue in order to attain the ends of justice. Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987).

CONCLUSION

In summary, we find the complaining witness's testimony was not inherently incredible as a matter of law, the trial court never prohibited defense witness Melissa Davis from testifying about CT's reputation in the community for truth and veracity, the trial court did not err in admitting as corroborative evidence the victim's delayed complaint to her father, and we are procedurally barred from addressing the propriety of the trial court's instruction to the jury about consecutive sentences.  Accordingly, we affirm the convictions.

Affirmed.

-