GARY T. SEAY *v.* STATE OF INDIANA.

[No. 1-975A164. Filed March 3, 1976.]

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Gary T. Seay (Defendant) was charged in two counts with Assault and Battery with Intent to Kill (IC 1971, 35-13-2-1 [Burns Code Ed.]), and Assault and Battery with Intent to Commit a Felony, to wit: Sodomy (IC 1971, 35-1-54-3 [Burns Code Ed.]). He was convicted of the lesser included offense of Aggravated Assault and Battery (IC 1971, 35-13-3-1 [Burns Code Ed.]) as to Count I of the information, and was acquitted as to Count II. He raises nine issues for our review.

## FACTS

Defendant was being held in the Vanderburgh County Jail pursuant to a separate offense not here in issue. He became involved in an argument with another prisoner in his cell because of an alleged sexual advance made by the Defendant. A fight ensued, and the complaining witness was injured when a piece of heavy wire with a barbed end was thrust into his neck by the Defendant. The complaining witness was removed from the cell block and taken to the hospital (the wire had

been removed from his neck by a third prisoner), while Defendant was also removed to an isolation cell for the night. It does not appear from the record how long Defendant was held in the isolation cell. The complaining witness and three other prisoners testified for the State.

## I.

The Defendant first alleges that the trial court erred when it denied Defendant's motion to dismiss because of the failure of the trial court to hold a proper probable cause hearing pursuant to IC 1971, 35-3.1-1-1(d) (Burns Code Ed.). That section provides:

"Whenever an indictment or information is filed and the defendant has not been arrested or otherwise brought within the custody of the court, the court shall issue a bench warrant for the arrest of the defendant. Whenever an information is filed and the defendant has not been arrested or otherwise brought within the custody of the court, the court shall issue a bench warrant for the arrest of the defendant after first determining that probable cause exists for such arrest. Whenever an information is filed and the defendant has already been arrested or otherwise brought within the custody of the court, the court shall proceed to determine whether probable cause existed for the arrest of the defendant *unless the issue of probable cause has previously been determined by a court issuing a warrant for the defendant's arrest* or by a court holding a preliminary hearing after the defendant's arrest." (Our emphasis.)

Contrary to the Defendant's contentions, the record clearly shows that a Justice of the Peace made a finding of probable cause and issued a warrant for Defendant's arrest. Thus, the requirements of the statute were fulfilled.

We note that Defendant has failed to show how he was prejudiced, even assuming we accept his interpretation of the status of the record. It is well settled that the only effect of an illegal arrest is that evidence obtained thereby may be suppressed. The jurisdiction of the

court over a person is not terminated by an illegal arrest. *DeWeese* v. *State* (1972), 258 Ind. 520, 282 N.E.2d 828.

## II.

The second error urged by Defendant is that the trial court erred in overruling and denying Defendant's motion to force the State to elect which count it wished to proceed upon. Defendant claims that the State proceeded under a dual form of affidavit.

We need not reach this contention in the case at bar, since Defendant was convicted of only the lesser included offense on the first count. Thus, no prejudice can be shown. *Webb* v. *State* (1972), 259 Ind. 101, 284 N.E.2d 812.

Defendant claims he was prejudiced because the multiple count information presented to the jury an irresistible temptation to compromise. Assuming, *arguendo,* that Defendant's contention is correct that there is only one chargeable offense involved, the result would be that the second crime would become a lesser included offense of the first. We cannot see where there would be any greater "temptation" in this case than in any other crime where a lesser included offense is involved. See *Webb* v. *State, supra.* There was no evidence admitted that would not have been equally admissible had only the greater offense been charged. We conclude that even if the information was erroneous in form, the error was rendered harmless by the verdict. *Webb* v. *State, supra.*

## III.

Defendant alleges error in the giving of State's Instruction No. 1, which provided:

> "You are instructed that the intention to kill may be inferred from the use of a deadly weapon in a manner likely to cause death."

He first contends that the wire was not a "deadly weapon." He also claims that the instruction invaded the province of the jury by characterizing the piece of wire as a "deadly weapon."

First, we note that a barbed piece of heavy wire, when used like a knife, may indeed be a deadly weapon. Such a determination is for the jury. This court on appeal will not say that, as a matter of law, such a piece of wire is not a deadly weapon, where there is sufficient evidence to support the opposite conclusion.

Second, Instruction No. 1 does not mention the wire, nor does it say that a deadly weapon was indeed used in this crime. It does state that if any deadly weapon is used in a manner likely to cause death, then the requisite intent can be inferred from such use. The instruction is a simple application of the legal maxim that one is presumed to intend the natural consequences of one's act. The instruction did not invade the province of the jury.

Finally, we point out that the court in *Deilks* v. *State* (1894), 141 Ind. 23, 40 N.E. 120, found a nearly identical instruction to be proper.

## IV.

Defendant next challenges State's Instruction No. 5. Instruction No. 5 reads as follows:

"The Constitution of this State makes the jury the judges of the law as well as of the facts. But this does not mean that the jurors may wilfully and arbitrarily disregard the law nor that they may make and judge the law as they think it should be in any particular case. It means that jurors, under their oaths, should honestly, justly, and impartially judge the law as it exists, and as it is found upon the statutes of our state, in each particular case. It does not mean that jurors may so judge the law in any case so as to make it null and void and of no force, but that they shall so judge the laws as to give them all a fair and honest interpretation, to the end that each and every law in each case may be fairly and honestly enforced. Any other interpretation of the law would weaken the safeguards erected by society for its protection; for by the non-enforcement of the law and its penalties in all criminal cases where it is shown by the evidence to have been violated, *contempt for the law is bred among the very class that it is intended*

*to restrain.* The facts must be judged and found by the jury from a careful consideration of all the testimony given by the witnesses in the case and under your oaths you have no right arbitrarily to disregard either the law or the facts in this case, without just cause, after a fair and impartial consideration of both." (Our emphasis.)

This instruction has been quoted and approved in *Holliday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679. In that case the court stated:

"The instruction in question has been challenged on numerous occasions before this court on appeal. (Citations omitted.) In each instance it was determined that the instruction was proper and in accord with prior case law. As was said in *Pritchard* v. *State* (1967), 248 Ind. 566, 230 N.E.2d 416:
'It should be readily noted upon a reading of said instruction that it is only a guideline, general in nature, which provides criteria for the jury in its approach to its serious duties in the trial of a criminal cause.' 230 N.E.2d at 419.
"We believe that the phraseology pointed to by appellant is general in nature and states an admonition which should be communicated to the jury in view of their obligation under Art. 1, § 19 of the Indiana Constitution to determine both *the law and the facts* in criminal cases. We fail to see where appellant has been prejudiced thereby." (Original emphasis.) 254 Ind. at 90, 257 N.E.2d at 682.

As pointed out above, this instruction is only a *"general guideline"* which provides criteria for the jury in its approach to its serious duties in the trial of a criminal cause.

Defendant specifically objects to that portion of the instruction that refers to "class," claiming that it violated his right to equal protection, since Defendant is black. We cannot agree. The "class" referred to here is the general class of lawbreakers. There is no intimation of racial class. *Holliday* v. *State, supra.* We find no error.

## V.

Defendant contends that the trial court erred when it gave State's Instruction No. 6, which read as follows:

"I submit this case to you with the confidence that you will faithfully discharge the grave duty resting upon you bearing in mind that the liberty of the accused is not to be trifled away nor taken by careless or inconsiderate judgment; but if after a careful consideration of the law and the evidence in the case you are satisfied beyond a reasonable doubt that the defendant, Gary T. Seay, is guilty, you should return your verdict accordingly. Duty demands it and the law requires it. You must be just to the defendant and equally just to the State. As upright men and women charged with the responsible duty of assisting the Court in the administration of justice, you will put aside all sympathy and sentiment and look steadfastly and alone to the law and the evidence in the case and return into Court such a verdict as is warranted thereby."

This particular instruction was given in *Presley* v. *State* (1972), 152 Ind. App. 637, 284 N.E.2d 526. In that case the court stated:

"It is well established that where the jury is satisfied that the defendant's guilt has been established beyond a reasonable doubt, that they have no choice, but must find him guilty, and it is not error to so instruct them." 284 N.E.2d at 529. See also *Certain* v. *State* (1973), 261 Ind. 101, 300 N.E.2d 345.

Defendant's sole contention is that a juror has but one duty, and that is to return a true verdict. He claims that juries have no duty to assist in the administration of justice, or to be just to the State of Indiana. Such contention is frivolous. We do not understand how a juror could have a duty to return a true verdict, and not at the same time have a duty to be just to the State of Indiana. The duties are identical. We reject Defendant's contention.

## VI.

Defendant next objects to an instruction that allowed the jury to find the Defendant guilty under both counts of the information. Defendant's contention is without merit for the same reasons we express in Part II, *supra*. The instructions

when read together informed the jury of all possible verdicts, including the one that Defendant was convicted of. Error, if any, was harmless.

## VII.

Defendant finds error in the trial court's ruling that permitted the State to submit an eleventh instruction to the judge, who eventually read it to the jury. He bases his contention on Ind. Rules of Procedure, Criminal Rule 8(A), which reads as follows:

> "In addition to instructions given by the court on its own motion, a party in any cause tried by a jury, before argument, shall be entitled to tender in writing not to exceed ten [10] proposed instructions to be given to the jury. However, the trial court, in its discretion, may fix a greater number in a particular case, *which number shall be stated of record by an order-book entry made by the court*. No party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule or the number fixed by the court order, whichever is greater. Each tendered instruction shall be confined to one [1] relevant legal principle." (Our emphasis.)

Here, the Defendant objected to the State's eleventh instruction on oral motion before the court. The court interrupted counsel, and said "[l]et the record show that the court granted permission for the additional instruction." Defendant claims that such permission must be granted by means of an order-book entry, and that failure to do so denied him the right to also submit an extra instruction.

We do not reach the merits of Defendant's argument for the reason that Defendant can show no prejudice in the case at bar. Defendant only submitted nine proposed instructions to the judge one less than he was permitted to submit. He can hardly complain that he was denied the right to submit an eleventh instruction, when he did not exercise his clear right to submit a tenth instruction.

We find no error.

## VIII.

Defendant contends that the trial court erred when it refused to give Defendant's Instruction No. 9. That instruction reads as follows:

"The statutes of this state require the sentence in certain cases to be for a term of imprisonment of not less than a certain number of years, for example in this case, two (2) years, and not more than a maximum of fourteen (14) years. Such a sentence is, in effect, a sentence for the maximbum number of years, unless a permit to be at liberty, or parole, is issued by the proper authority in case a reformation of the convict is effected."

When the Defendant challenges the trial court's decision to refuse to give one of his tendered instructions, he must meet the test laid out in *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387. In that case the court stated:

"A trial court refusal to grant tendered instructions will be reversed only if, considering the evidence in the case, the substance of the instruction was required to be given and was not adequately covered by other instructions actually given by the trial court." 257 Ind. at 288, 274 N.E.2d at 390.

Here the Defendant has failed to show that this instruction was required. He cites *Miller* v. *State* (1898), 149 Ind. 607, 49 N.E. 894 in support of his argument. However, the *Miller* case did not mention anything about instructions nor did it approve of this instruction. Instead, it discussed the constitutionality of certain Indiana statutes that dealt with indeterminate sentences. Thus, the Defendant has failed to show that this instruction was required. This follows the decision in *Fenwick* v. *State* (1974), 159 Ind. App. 311, 307 N.E.2d 86, where the court, in deciding that such an instruction need not be given, stated:

"Conceding that he could find no authority, Fenwick asserts that the instruction should have been given because it is a correct statement of the law and because the jury has a

right to know about the law concerning the sentencing of a defendant.

"We fail to appreciate the thrust of Fenwick's argument. To begin with, the crime charged—commission of crime while armed with deadly weapon—calls for a determinate sentence, not an indeterminate one, and the jury was so instructed. *Furthermore, the jurors were instructed re-regarding the various lesser included offenses of which Fenwick could have been convicted, including their respective penalties most of which allowed for indeterminate sentences.*" (Our emphasis.)

Defendant argues that his case does not involve a determinate sentence, and thus the *Fenwick* case should not apply. While the court in that case treated the issue somewhat summarily, we note that there were some *indeterminate* sentences involved there, and thus the *Fenwick* case cannot be distinguished on that ground. We certainly find nothing in that case that would *require* that this instruction be read to the jury. We hold, on the basis of *Dillard* and *Fenwick*, that there was no error in the trial court's refusal to give this instruction.

## IX.

Finally, Defendant contends that his subsequent trial and conviction on this charge violated the Fifth Amendment to the United States Constitution, in that Defendant was twice put in jeopardy for the same offense. Defendant had been placed in an isolation cell immediately after the incident in question. He claims that since he was punished by solitary confinement, he could not later be punished again by a conviction for the same wrong.

The record does not support the conclusion that Defendant was "punished" by being placed in solitary confinement. All that the record reveals is that Defendant was removed to an isolation cell after fighting with other prisoners in his own cell. Clearly, such a procedure was necessary to maintain order in the jail. There is no indication that such a procedure

was initiated solely to punish the Defendant for misbehavior.[1] We find no merit in Defendant's contentions.

Finding no error, the judgment is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 342 N.E.2d 879.

---

1. We express no opinion as to the case where solitary confinement is imposed solely as a means of punishment.