DAN FEGGINS *v.* STATE OF INDIANA.

[No. 676S176.  Filed January 25, 1977.]

*William G. Smock,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant was convicted of second degree murder, Ind. Code § 35-1-54-1 (Burns 1975) after trial by jury. He appeals, raising the following issues:

(1) Sufficiency of the evidence.

(2) alleged error in the giving of an instruction concerning the jury's duty;

(3) alleged error in the trial judge's mentioning the possibility of parole during voir dire.

John D. Beckles, known as "Trinidad," occupied a house in Terre Haute in which he operated a gambling establishment. In the morning of September 27, 1975, several persons were in this house gambling on dice. The appellant and decedent Walter Barnett were gambling together; appellant was winning from Barnett. Some words were exchanged between the men, and Barnett lunged at appellant with a Barlow pocket knife with a three and seven-eighths inch blade. Barnett struck at appellant twice, while the latter was either kneeling

or lying on the floor. One of the blows caused a small cut to appellant's chest over his heart.

Hearing the disturbance, Beckles came into the room and interposed himself between appellant and Barnett, telling Barnett to leave. Barnett backed away from Beckles, out into the kitchen and to the back door. He kept the knife in his hand. Barnett stopped on the steps outside the back door. He still faced Beckles who stood in the doorway. Beckles carried a Smith & Wesson .45 caliber revolver in his rear pants pocket. Appellant seized the gun and shot at Barnett. None of the witnesses saw what happened immediately after the first shot, but most heard two more shots fired. Soon thereafter some of the witnesses saw Walter Barnett lying in the intersection of Twenty-Second and Chase Streets, upon one corner of which Beckles' house is located. Several witnesses saw appellant kick Barnett's head and strike it with the revolver. Carolyn Winston, who had accompanied Barnett to the house that night, went out to him. Barnett was breathing when she reached him but stopped breathing as she stood with him.

Officer Larry Trueblood of the Terre Haute Police Department was the first policeman to arrive. He found Barnett lying in the street. Barnett had no pulse the officer could detect. Barnett had suffered bullet wounds to the chest and right lower leg. Officer Trueblood found Barnett's knife lying closed on the ground.

Barnett was pronounced dead by the corner. An autopsy revealed that the bullet which entered his chest had nicked his aorta, causing death by internal bleeding. Appellant was taken to the hospital where his cut was cleaned.

Appellant gave a written statement after advice and waiver of rights. He admitted shooting Barnett, who he claimed was trying to attack him with the knife. The witnesses who could see Barnett as he stood on the back steps did not see him attack or lunge at appellant.

## I.

Appellant argues that the evidence was insufficient to show the elements of second degree murder and to disprove his contention that he acted in self-defense. We are required to repeat that in reviewing the sufficiency of the evidence we do not weigh the evidence or judge credibility. Looking to the evidence which supports the verdict and reasonable inferences therefrom, we determine whether there is evidence of probative value from which the trier of fact could reasonably find the existence of each element of the offense. *Horton* v. *State*, (1976) 265 Ind. 393, 354 N.E.2d 242.

Second degree murder is defined in Ind. Code § 35-1-54-1, which provides:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree. . . ."

Thus the State must prove that appellant (1) killed a human being, (2) purposely, and (3) with malice. Appellant contends that the element of malice was not proven.

This Court has previously defined malice[1] thus:

> "An act is done with malice when it is done with 'any evil design in general.' In homicide, a purposeful killing is done with malice if it is done neither in self-defense nor in the heat of passion induced by sufficient provocation." *Shackleford* v. *State*, (1976) 264 Ind. 698, 349 N.E.2d 150, 154; *McKinstry* v. *State*, (1975) 264 Ind. 29, 338 N.E.2d 636, 640.

The often stated rule that malice may be inferred from the intentional use of a deadly weapon in a manner likely to cause death or great bodily harm, *White* v. *State*, (1976) 265 Ind. 32, 349 N.E.2d 156, 160, is merely an alternative phrasing of the same rule. Therefore the ver-

---

1. Malice is an element of both first degree and second degree murder, and its definition is the same with respect to both offenses.

dict will stand if there is evidence from which the jury could reasonably conclude that when appellant shot Walter Barnett,[2] he acted neither in self-defense nor in the heat of passion induced by sufficient provocation.

Appellant relies on *Dickens* v. *State*, (1973) 260 Ind. 284, 295 N.E.2d 613, to support his position that appellant acted in a sudden heat. In *Dickens* the defendant shot her husband during an episode of unprovoked violence by the husband. The deceased had been drinking and taking various medications. He suddenly threw a jar of instant coffee at his wife, then smashed a chair. He slammed a friend into a cabinet. The defendant had picked up her husband's pistol in order to prevent him from using it. When the defendant went back to the room in which she had left her husband, he advanced upon her, and she shot him.

We held that fear, when such as to render the defendant incapable of cool reflection, may be such a state of "passion" as will preclude malice. We found the evidence in *Dickens* to be such that the defendant in that case was incapable of forming malice. Appellant urges that the case at bar is analogous to *Dickens:* Barnett was drinking and behaving irrationally; he attacked appellant and wounded him. Barnett was also known as a violent man. He had previously been convicted of armed robbery and rape.

There was certainly provocation which could have aroused both fear and anger in appellant. However, the jury could reasonably have found that such provocation was not sufficient to preclude the formation of malice, or that any passion thus induced had subsided. Unlike the defendant in *Dickens,* appellant shot Barnett some time after the decedent's unprovoked violence had ceased. Moreover, in *Dickens,* it was the defendant's husband who committed the irrational and unprovoked violence; the fact that it was the defendant's spouse engaging in such behavior could reasonably be expected to

2. Appellant does not contend that he did not shoot Barnett.

compound the mental distress to which she was subject. We find that there was sufficient evidence of malice.

Appellant also alleges that he acted in self-defense, setting out the elements of self-defense, and applying each to himself. His discussion presupposes that the jury was required to believe the version of the facts given by appellant in his statement: that appellant shot Barnett while Barnett was trying to stab him. However, there was ample evidence from which the jury could have believed that appellant shot at Barnett while the latter was merely standing in the doorway; that appellant pursued Barnett from the doorway shooting at him; and that when Barnett fell the appellant struck and kicked him. There is therefore no requirement that we discuss the law of self-defense, for under the evidence most favorable to the jury's verdict there is no genuine issue of self-defense.

## II.

The trial court gave the following final instruction to the jury:

> "I submit this case to you with the confidence that you will faithfully discharge the grave duty resting upon you bearing in mind that the liberty of the accused is not to be trifled away nor taken by careless or inconsiderate judgment; but if after a careful consideration of the law and the evidence in the case you are satisfied beyond a reasonable doubt that the defendant, Dan Feggins, is guilty, you should return your verdict accordingly. You must be just to the defendant and equally just to the State. As manly, upright men and women charged with the responsible duty of assisting the Court in the administration of justice, you will put aside all sympathy and sentiment and look steadfastly and alone to the law and the evidence in the case and return into court such a verdict as it [sic] warranted thereby."

Appellant objected to this instruction and argues that it contravenes the provision of the Indiana Constitution that in all criminal cases "the jury shall have the right to determine the law and the facts." Art. 1, § 19. As authority for

this proposition, appellant cites *Burris* v. *State*, (1941) 218 Ind. 601, 34 N.E.2d 928. In *Burris* we noted that this section

"has never been construed as restricting the power of a trial court to declare the law to a jury, but it has been said in numerous cases that this must not be done in a manner calculated to bind the consciences of the jurors or restrict them in their right under the Constitution to determine the law for themselves." 218 Ind. at 604, 34 N.E.2d 929.

We then held that the giving of an instruction charging the jurors that, while they were judges of the law as well as of the facts, they should weigh the court's instructions as they weigh the evidence "and disregard neither without proper reason" was error.

In *Beavers* v. *State*, (1957) 236 Ind. 549, 141 N.E.2d 118, we considered Art. 1, § 19, in considerable depth, examining its history and the development of this area of the law in other jurisdictions. The jurors in that case were instructed that they may not arbitrarily disregard the law; that it is their duty to determine the law as it is. We held that our Constitution confers upon the jury the power to disregard the court's instructions, but that the jury's duty was to consider those instructions and not to disregard them lightly. The *Beavers* court's instruction was therefore correct.

Since *Beavers* we have considered instructions dealing with the duty of the jurors in several cases. In *Holliday* v. *State*, (1970) 254 Ind. 85, 257 N.E.2d 679, we approved an instruction stating, in part, that the jury must give laws "a fair and honest interpretation" so as to avoid weakening "the safeguards erected by society for its protection," and that the non-enforcement of laws creates contempt for the law. In *Loftis* v. *State*, (1971) 256 Ind. 417, 269 N.E.2d 746, we held that instructing the jury that they should convict the defendant if they believed that the elements of the offense had been proven beyond a reasonable doubt, citing numerous Indiana cases. In *Certain* v. *State*, (1973) 261 Ind. 101, 300 N.E.2d 345, we upheld the giving of a substantially identical instruc-

tion to that given in this case. The Court of Appeals has also twice approved this instruction. *Seay* v. *State,* (1976) Ind. App., 342 N.E.2d 879, 884; *Presley* v. *State,* (1972) 152 Ind. App. 637, 284 N.E.2d 526. There was no error in giving this instruction.

## III.

During voir dire examination of the prospective jurors the court inquired whether the penalty for first degree murder, life imprisonment, was so severe that any juror could not convict appellant. A member of the panel asked whether life imprisonment would mean imprisonment for the remainder of appellant's life. The court summoned counsel to the bench and indicated that he intended to instruct the jury regarding the possibility of parole. Defense counsel argued against such an instruction. Eventually the judge said that he would not instruct regarding parole. Defense counsel objected as though the court had indicated that he would so instruct on the grounds that punishment was not an issue for the jury's consideration.

The court then said to the jurors:

"Ladies and Gentlemen, if the de—if a defendant is convicted of murder in the first degree and is sentenced, I have to send him the Court has no power to suspend the sentence. I must by law send him to prison for the remainder—ah—for a sen—according to law it says during life. However, some people in prison do get paroled prior to their natural death, when that is and if anyone and if everyone gets it, that is not for us to consider or when he is eligible for parole, if ever. I would, I would instruct you that some people who are convicted of murder in the first degree and receive a life sentence, die in prison, remain there the rest of their natural life, and some people are paroled and be prior to their natural death, other than that, I can't go into it because I don't know, and no one knows at this point in time. Answer that question?"

Appellant contends that this statement deprived him of a fair trial.

The State argues that appellant has waived this issue because he objected before the instruction, after the judge had said he would not instruct on parole. This argument has no merit and does no credit to the State. The objection brought the assigned error to the court's attention with reasonable specificity and afforded the court an opportunity to avoid such an error.

The State next argues that the record provided by appellant does not show whether any of the prospective jurors to whom the remark was addressed were actually accepted and sworn as jurors; hence the record fails to demonstrate that he was prejudiced by the statement. However, the trial court issued an order that only the court's voir dire be included in the record, pursuant to agreement of appellant and the State. The State has therefore waived the contention that the voir dire record is insufficient.

Neither party has provided the Court with much assistance in deciding the substance of this issue. Appellant cites *Wilson* v. *State,* (1976) Ind. App., 346 N.E.2d 279, in which the Court of Appeals correctly held that when the punishment for the offense charged is not to be fixed by the jury, the trial court errs in instructing the jury on matters relating to the penalty (in that case, credit for pre-sentence confinement). The Court of Appeals relied on *Rowe* v. *State,* (1968) 250 Ind. 547, 237 N.E.2d 576, in which we held that when the jury was not called upon to fix the penalty, conduct of the prosecutor in arguing to the jury that the defendant might be paroled within two years required reversal. *Rowe* distinguished our prior decision in *Watts* v. *State,* (1949) 226 Ind. 655, 82 N.E.2d 846, rev'd other grounds 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, where such prosecutorial comment had been permitted, because in *Watts* the jury had the power to sentence the accused either to death or to life imprisonment.

In three other cases outside this cycle, we have disapproved actions by the court or prosecutor which suggested to the jury

that the defendant, if convicted, would not serve the statutory sentence. In *Pollard* v. *State*, (1929) 201 Ind. 180, 166 N.E. 654, 84 A.L.R. 779, we disapproved a prosecutorial argument similar to that in Rowe, although we held that the defendant had waived the error. In *Bryant* v. *State*, (1933) 205 Ind. 372, 186 N.E. 322, we reversed the conviction in a case in which the trial court had intimated to the jury that if the defendant were convicted, the court would suspend his sentence. In *Deming* v. *State*, (1956) 235 Ind. 282, 133 N.E.2d 51, we quoted with approval a passage from *Coward* v. *Commonwealth*, (1935) 164 Va. 639, 178 S.E. 797, holding that it is error for the court to tell the jury that the sentence it imposes will not be served, or will be substantially diminished. It appears that the great majority of jurisdictions disapprove of such statements to the jury either by the court or the prosecutor. See Anno. 16 A.L.R.3d 1137 (1966) ; Anno. 12 A.L.R. 3d 832 (1964).

The danger to be avoided in such a case is that the jury, informed of the possibility of factors which could diminish the defendant's sentence, will convict the defendant of a more serious offense than that which they actually believe him to be guilty of, in order to provide a penalty which they consider more appropriate. When the jury is called upon to fix the penalty, we have held in the past that the jury may consider such factors, because they are charged with determining the appropriate penalty. *Watts* v. *State, supra.*

In the case at bar *Watts* would seem to apply. Although appellant was charged with first degree murder, Ind. Code § 35-13-4-1(a) (Burns 1975), which provides for a mandatory life imprisonment sentence, appellant could also be, and was, convicted of the lesser included offense of second degree murder. *In re James*, (1966) 247 Ind. 339, 215 N.E.2d 863. When the jury convicts a defendant of second degree murder, it must decide whether the sentence shall be imprisonment for life or for a term of fifteen to twenty-five years. *Brown* v. *State*, (1969) 252 Ind. 161, 247 N.E.2d 76.

We believe that *Watts* is incorrect. The Legislature, whose responsibility and prerogative it is to assign penalties to crimes, *Lowe* v. *State*, (1973) 260 Ind. 610, 298 N.E.2d 421, has provided that juries should have discretion in fixing penalties in certain offenses. The jury is not, however, allowed full access to information regarding the defendant's social, economic, educational, and criminal background, such as is required to be contained in the pre-sentence report considered by the trial court when it must set the sentence, Ind. Code § 35-4.1-4-9, -10 (West 1976) ; Ind. Code Ann. § 35-8-1A-9, -10 (Burns 1975). Therefore we must conclude that the Legislature intended the jury to consider the aggravating or mitigating circumstances of the crime, and not the personal characteristics of the offender, in assessing punishment in such cases.

The statutes relating to parole, Ind. Code §§ 11-7-1-1 to 9 (Burns 1973) and to diminution of sentences for good behavior, Ind. Code §§ 11-7-6.1-1 to 8, (Burns 1973), and the constitutional provision vesting pardon powers in the governor, Ind. Constitution, Art. 5, § 17, on the other hand, are intended, inter alia, to recognize such personal characteristics of convicted persons as bear on their future propensities to be useful members of society or dangerous thereto. We do not believe that the Legislature intended to allow juries to circumvent this function of the governor, parole board and department of corrections by anticipating and allowing for the possibility of pardon, parole, or "good time" sentence reduction.

The Supreme Court of California has stated this proposition thus :

> "The function of the jury is to consider the facts surrounding the crime and defendant's background, and upon that basis, reach its decision. The jury should not be invited to decide if the defendant will be fit for release in the future. . . .
>
> \* \* \*
>
> The legislature established the Authority [corrections agency] as a specialized body, aided by a trained staff,

to decide such questions. It reaches its decisions after the prisoner has received treatment at a corrective institution, has been carefully supervised, and has been afforded an opportunity to understand his maladjustment. From years of annotated observation of the defendant the Authority can render an informed prognosis as to his potential. The jury, on the other hand, must plunge into a judgment based on conjecture; it must attempt to perform a function . . . expressly granted to another institution and impliedly denied to it." *People* v. *Morse*, (1964) 60 Cal.2d 631, 36 Cal. Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810, 820. See also *State* v. *White*, (1958) 27 N.J. 158, 142 A.2d 65; *Broyles* v. *Commonwealth*, (Ky. 1954) 267 S.W.2d 73, 47 A.L.R.2d 1252.

Therefore, *Watts* is overruled to the extent that it is inconsistent with this opinion. We hold that it is error for the court to instruct and improper for the prosecutor to argue that a convicted defendant will serve a lesser sentence than that to which the jury sentences him.

However, while it is our intention to exclude consideration of possible post-conviction diminutions of sentences from the jury's deliberation, we doubt the efficacy of a rigid rule prohibiting mention of the possibility of such diminution to the jury in achieving this result. Studies have shown that juries are quite concerned with the punishment actually to be inflicted, and that discussion of such punishment often dominates their deliberations. Kalven & Zeisel, The American Jury 307 (1966). It is unrealistic to assume that jurors are completely unfamiliar with such concepts as parole or "time off for good behavior" which affect the length of sentences actually served. Discussion of such concepts appear frequently in the daily news. It is equally unrealistic to assume that they are well-versed in the complicated area of sentencing, parole, and "good time." Thus by forbidding all comment on parole, we encourage the jurors to speculate as to parole contingencies on the basis of their individual beliefs and impressions, which may bear little or no resemblance to reality, and to demonstrate concretely the proverbial danger of "a little knowledge." The best

approach to the prevention of such inappropriate jury speculation, an approach which is fair to the accused and the State, is to instruct the jury upon their inquiry or upon the inadvertent introduction of the subject before the jury, that, first, the State is authorized by law to confine the accused for the full length of any sentence received by him, but that second, various devices exist which could reduce the length of any sentence received by the defendant, including parole, pardon, and "good time," and that the length of the sentence which the accused will actually serve is contingent upon numerous future events and cannot be determined with any reasonable certainty at the time of trial. For this reason the jurors should exclude consideration of such devices from their deliberations so as not to fall into fruitless speculation.

This admonition will be more effective in focusing jury attention on proper considerations than a bare instruction to the jury that parole is no concern of theirs. The act of inquiring about parole shows that one or more jurors is indeed concerned, if improperly, with the possibility of parole, and an explanation that the jury is not able to consider properly the possibility of parole will have better effect than an arbitrary prohibition.

In the instant case, the court instructed the prospective jurors that while some prisoners sentenced to life were paroled, and some served the full life sentence, this issue was not for the jury's consideration. The court substantially complied with the ruling we make today, and did not err. We need not therefore reach the State's harmless error argument.

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn and Prentice, JJ., concur; Hunter, J., dissents with opinion.

### DISSENTING OPINION

HUNTER, J.—I dissent from that part of the majority opinion which allows the trial court to instruct the jury as to the possibility of parole. All powers affecting the length of time served on an imposed sentence are vested in the execu-

tive branch of government. As such, the jury should not be informed of the law on the subjects of pardon, parole or good time. Annot., 35 A.L.R.2d 769 (1954). Upon an inquiry, the judge should inform the jury that powers of pardon and parole embrace matters exclusively relegated to the executive department and that powers of mitigation are not proper matters for their consideration. To do more is to invite speculation and involves the judiciary in subjects outside its proper realm.

NOTE.—Reported at 359 N.E.2d 517.