Eric Lavern TYSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 278S36.

Supreme Court of Indiana.

March 19, 1979.

George T. Popcheff, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Tyson and one Bruce Allen Kimble were charged by way of information with two counts of murder in the perpetration of first degree burglary and one count of first degree burglary. A jury in the Marion Criminal Court found Tyson guilty of all three counts on August 24, 1977. He was sentenced to life imprisonment on each of the murder counts and to a term of ten to twenty years for burglary. The charges arose from an incident which occurred on or about October 4, 1975, when two elderly ladies, who were sisters, were killed during a burglary of their home located in Indianapolis. Also charged in relation to these offenses was one James Coleman who was charged in a separate information. Nine alleged errors are argued by appellant. These concern: (1) the admission into evidence of an incriminating statement made by appellant; (2) remarks made by the trial judge in a videotape shown to the panel of jurors during an orientation session prior to their being called for trial; (3) remarks made by the trial judge to the jury during voir dire; (4) the court's decision to restrict counsel to a total of twenty minutes for interrogating prospective jurors; (5) the trial judge informing the jury that two expert psychiatric witnesses were appointed by the Court; (6) the Court's instruction No. 33; (7) the Court's instruction No. 23; (8) remarks made by the prosecutor during final argument, and; (9) the trial Court's procedure of allowing the jurors to submit written questions to the Court to be asked of counsel in clarification of statements made during final argument.

I.

Appellant filed a pre-trial motion to suppress a statement he made to Officer James Parnell and other members of the Indianapolis Police Department on October 6, 1975. On that date, appellant was in the Marion County Jail serving a week-end sentence on another charge and was due to be released at 5:00 a. m. that morning. However, the police had earlier arrested James Coleman and had obtained appellant's name from Coleman's statements relative to the burglary and killings. The police accordingly removed appellant from his cell at approximately 3:30 a. m. for the purpose of interrogating him about the incident.

Officer Parnell advised appellant of his *Miranda* rights by the use of a written form which he furnished to appellant and which stated: "You have the right to remain silent, anything you say can be used against you in court, you have a right to have a lawyer present now, and if you do not have the money to obtain a lawyer, you have the

right to have one appointed for you by the court." Appellant read this form in the officer's presence and the officer in turn read the form to appellant. Tyson then signed the waiver on the form which stated that he had read it and fully understood his rights and did not want a lawyer to represent him at that time. This waiver occurred at about 4:00 a. m.

The statement was taken by means of a tape recorder and was later reduced to a typed statement but was not signed by appellant. The written statement indicates that appellant was again advised of his right to have counsel present and was asked if he understood this to which he replied, "Yes." Appellant made no request for an attorney during the course of the statement.

■ Appellant first argued for suppression of his statement based on the alleged illegality of his arrest on the morning of October 6. This argument is without merit. In the first place, appellant was already in police custody and was not due to be released until 5:00 a. m. Furthermore, the police clearly had probable cause to suspect that appellant was involved in the felonies based on the statement of appellant's accomplice, James Coleman. The police thus had the right to question appellant without first obtaining an arrest warrant from a magistrate since it would be straining due process requirements to expect that the police should properly have attempted to locate a magistrate at 3:00 a. m. under circumstances in which the defendant was scheduled for release within two hours. As the police had probable cause to suspect that appellant was involved in these crimes they were justified in arresting him without a warrant. *Garr v. State*, (1974) 262 Ind. 143, 312 N.E.2d 70.

■ Appellant further argues that even though he was advised by police of his right to have a lawyer and that one would be appointed for him if he could not afford his own, it nevertheless was not made plain to him that he had an immediate right to a lawyer and that all questioning would cease if he desired to wait until one could be obtained. The record sufficiently shows, however, that in addition to the written *Miranda* form set out above, appellant was asked twice by the interrogating officer whether he understood that he had a right to an attorney at that time and he stated, "Yes," he did understand that. His signed waiver indicated that he was willing to make the statement and did not wish to have an attorney appointed for him. We conclude that appellant's waiver of rights was based on sufficient and adequate advisements in compliance with *Miranda* and similar advisements which this Court has previously upheld. See *Gaddis v. State*, (1977) Ind., 368 N.E.2d 244; *Jones v. State*, (1969) 253 Ind. 235, 252 N.E.2d 572, *cert. denied* (1977) 431 U.S. 971, 97 S.Ct. 2934, 53 L.Ed.2d 1069.

■ Finally, appellant contends that due to his low mentality, he was unable to understand his rights and therefore his statement was involuntary. At the competency and suppression hearings both court appointed doctors, Hull and Schuster, testified that appellant was competent, and understood the charges against him and the legal proceedings in which he was involved. Dr. Hull testified that appellant could understand the English language and was able to comprehend the questions that Dr. Hull asked. Dr. Hull further stated that merely because a person has difficulty reading does not mean that he is without intelligence. He also felt that this appellant had the ability to learn and could relate his previous experiences which included numerous encounters with the law. It was the opinion of these two experts that appellant had sufficient understanding of his constitutional rights to be able to waive them. Appellant called his own expert witness at the suppression hearing whose testimony disagreed with the conclusions reached by doctors Hull and Schuster.

The question of the admissibility of a confession is to be controlled by determining from the totality of the surrounding circumstances whether or not it was made voluntarily. The same test is applied to determine whether a valid waiver of the

*Miranda* rights has occurred. We review these questions on appeal as we do other sufficiency matters. We do not weigh the evidence or judge the credibility of witnesses, but rather, determine whether there is substantial probative evidence to support the trial court's finding. This Court will not ordinarily disturb such finding when it is based on conflicting evidence. *Richardson v. State*, (1978) Ind., 373 N.E.2d 874; *Sypniewski v. State*, (1977) Ind., 368 N.E.2d 1359, 1363. As there was substantial, though conflicting evidence presented at the suppression hearing we affirm the trial court's ruling with respect to the admissibility of appellant's statement.

## II.

■ Appellant's next objection goes to remarks by the trial court contained in a videotaped recording which was presented to prospective jurors outside the presence of appellant and his attorney. This videotape presentation was in the nature of an orientation session for newly assembled jurors called to serve in criminal trials. Appellant argues that certain of the judge's comments in the recording were tantamount to jury instructions and thus should not have been given outside the presence of counsel. We disagree.

Again, we emphasize that these jurors had not yet been called to serve in any particular case but were merely assembled as a panel from which the parties could select a jury for their case. An examination of the transcript reveals that the orientation presentation was designed to give prospective jurors general instruction and information on what they might expect as to the process of selection of a jury in a criminal trial. None of the judge's comments were directed to a particular case or trial. The comments applied to all trials generally and attempted to inform the jurors of the part they would take at trial, should they be selected, along with general information about criminal law with reference to evidence, burdens of proof, etc. Since this presentation did not in any way refer to the particular law or facts applica-

ble to appellant's case, we fail to see how he was prejudiced by not being present at the time. Moreover, the record shows that the jury which eventually heard appellant's trial was adequately instructed, both preliminarily and finally, as to the appropriate law of the case. With the exception of the instructions treated in Issues VI and VII, *infra*, there is no allegation that the jury was not completely and properly instructed by the court. We therefore find that no reversible error was committed by the court regarding this issue.

## III.

■ The appellant moved for a mistrial at three different points during the voir dire examination of the jury in which the judge was discussing and explaining the charges faced by Tyson. After reviewing the record of the entire discussion, we conclude that the statements, taken in context, were not offensive.

First, in explaining the difference between felony murder and premeditated murder, the judge stated that even an accidental killing during the commission of a felony might subject one to a charge of felony murder. He went on, however, to explain at greater length that felony murder is the killing of someone during the commission of a felony even when the elements of premeditation and malice are lacking.

Next, the judge explained that appellant was charged with murdering the victim during the commission of first degree burglary and also with first degree burglary. The judge stated that, "This may seen redundant to you" but it is necessary for the state to charge in this manner because in a felony murder charge there are no included offenses. The judge was pointing out to the jury that under the felony murder count they could find appellant guilty of murder but could not find him guilty of burglary. Thus, the burglary count was charged separately.

Finally, in discussing the defense of insanity, the court used the language, "This may sound crazy to you." He then correct-

ed himself and said that the language might seem complicated but there really was some meaning and purpose to it when they understood what the legislature intended by the insanity plea. He then went on to further and correctly explain the plea to the jury.

Again, appellant does not claim that the court failed to properly instruct the jury on these and other matters in the preliminary and final instructions. As stated above, when taken in context, we do not feel that these remarks went beyond the bounds of proper comment nor do we see how appellant was in any way prejudiced. The motions for mistrial were properly denied.

## IV.

█ The trial court conducted voir dire of the prospective jurors and then allowed each party twenty minutes to interrogate them. The judge also stated that the parties would be allowed to submit written questions to supplement the oral voir dire examination. However, it does not appear that appellant availed himself of this opportunity. He now contends that the twenty minute limitation was unduly restrictive.

The procedure at issue here was recently approved by this Court in *Roberts v. State*, (1978) Ind., 373 N.E.2d 1103, and we reaffirm that ruling herein. *See also, Bradberry v. State*, Ind., 364 N.E.2d 1183; *Hart v. State*, (1976) 265 Ind. 145, 352 N.E.2d 712; *White v. State*, (1975) 263 Ind. 302, 330 N.E.2d 84. There is no error here.

## V.

█ Appellant next argues that the trial court erred when it informed the jury that two expert psychiatric witnesses were appointed by the court thereby lending undue credibility to their testimony. Ind.Code § 35–5–2–2 (Burns 1975) provides in part:

"When an insanity defense is pleaded, the court shall appoint two [2] or three [3] competent disinterested physicians to examine the defendant, and to testify at trial. Such testimony shall follow the presentation of the evidence for the pros-

ecution and for the defense, including testimony of medical experts employed by the state and by the defense, if any."

The court explained to the jury that due to the difficulty in scheduling doctors to testify at trials, these doctors were being called out of order by agreement of the parties. The judge then conducted the direct examination of the doctors who were then passed to both parties for cross examination. *See Musick v. State*, (1976) 265 Ind. 207, 211, 352 N.E.2d 717, 720 (approving this manner of examination).

The State maintains that the trial judge, by informing the jury that the doctors were appointed by the court, was merely informing them of the procedures which were required by law so that the jury might understand why these doctors were handled differently than other witnesses. The State further argues that inasmuch as this difference in treatment was apparent to the jury, it was desirable for the court to clarify the witness' status so that the jury was not left to speculate as to whose witnesses they were and to whom they should assign an acceptance or rejection of their testimony.

We agree with the State's position in this matter and conclude that, on the record, appellant has not demonstrated that he was prejudiced by the trial court's disclosure. The fact that the two doctors testified that appellant was sane does not establish such prejudice. *Blackburn v. State*, (1973) 260 Ind. 5, 25, 291 N.E.2d 686, 698. There is thus no error in this issue.

## VI.

█ Over appellant's objection, the trial court gave its Instruction No. 33 which concerned the many sentencing alternatives available to the court and the possibilities and probabilities of a convicted defendant's being placed on probation, on parole or pardoned. The instruction informed the jury that these post-conviction matters were all beyond the present knowledge or control of the court and that therefore the jury was not to consider or speculate as to the actual amount of time a person might serve. This instruction accurately conveyed the law as

enunciated by this Court in *Feggins v. State*, (1977) 265 Ind. 674, 359 N.E.2d 517. In *Feggins*, a juror, during voir dire, asked the trial judge whether a life sentence actually meant that the defendant would spend life in prison. The trial judge answered that while some prisoners served the full life sentence, and some were paroled, this issue was not for the jury's consideration. We held that this response was in substantial compliance with our conclusion that such extra-judicial devices as parole, good-time credit and executive pardon should not be considered by the jury in reaching its verdict or fixing sentence. *Id.* at 265 Ind. 686, 359 N.E.2d 524–525. In the present case, we think it no less appropriate for the trial judge, in his discretion, to inform the jury during final instructions that they were not to consider such factors in reaching their verdict.

Appellant's objection to this instruction was that it was incomplete in not including information as to the post-trial proceedings which would occur if appellant were found not guilty by reason of insanity. Appellant concedes that he did not request a separate instruction covering this area. At any rate, this Court has consistently held that a defendant is not entitled to such an instruction. *Malo v. State*, (1977) Ind., 361 N.E.2d 1201, 1205; *Johnson v. State*, (1977) 265 Ind. 689, 359 N.E.2d 525; *Lockridge v. State*, (1975) 263 Ind. 678, 338 N.E.2d 275. We accordingly find no error in the giving of this instruction.

## VII.

■ With reference to the issue of sanity, the trial court instructed the jury as follows:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. . . ."

To supplement this instruction, the court gave its Instruction No. 23 which stated "I instruct you that with reference to the

words substantial capacity, substantial means something less than absolute or total." Appellant, objected to this instruction alleging that it was incomplete. He contends that because the instruction does not state that substantial capacity is more than minimal capacity, it permitted the jury to consider a very minimal capacity to appreciate wrongfulness, to come within the definition of sanity. This contention is without merit. The instruction given correctly stated the law in this State. "A complete incapacity of the defendant's mental faculties need not be proved, but rather the ultimate question of fact is whether the defendant lacked substantial capacity to conform." *Hill v. State*, (1969) 252 Ind. 601, 615, 251 N.E.2d 429, 437. The term "substantial" has been defined as "Something worthwhile as distinguished from something without value or merely nominal," *Black's Law Dictionary* 1597 (Rev. 4th Ed. 1968), and "considerable in degree, amount, or extent . . . ." *The American Heritage Dictionary of the English Language* 1284 (1975). We think it unlikely that any juror would equate the term "substantial" with the term "minimal" and thus find no error in this issue.

## VIII.

■ During his discussion of insanity in his final argument, the prosecuting attorney invited the jury to reflect on their observations of the defendant during his sixteen hours before them, in order to help in determining whether or not his behavior comported with his theory of insanity. Appellant did not take the stand and it is his contention that the prosecutor's comment served to call attention to this fact. This contention is specious. The prosecutor's comment was directed toward appellant's courtroom demeanor and was in no way a direct or indirect reference to his failure to testify. *Compare Rowley v. State*, (1972) 259 Ind. 209, 285 N.E.2d 646.

■ He further argues that since the jury was only to consider the testimony and evidence which came from the witness stand, his observable in-court conduct was

not properly a subject for the jury's consideration. We agree that the prosecutor acted improperly by commenting on matters which were not introduced as evidence. *Adams v. State*, (1974) 262 Ind. 220, 314 N.E.2d 53; *Derry v. State*, (1932) 204 Ind. 21, 182 N.E. 701. However, we do not agree that this impropriety required that appellant's motion for mistrial be granted. The record shows that the jury was completely and accurately instructed. They were instructed that the issue of appellant's sanity was to be determined on the basis of all of the testimony and that their verdict was to be based upon the testimony of the witnesses. They were further charged that their verdict was to be based upon the evidence and testimony presented on the witness stand and not on anything said by the attorneys during argument. On appeal, we must presume that the jury obeyed the court's instructions in reaching its verdict. *State v. Brubeck*, (1930) 204 Ind. 1, 170 N.E. 81; *Travelers Indemnity Co. v. State ex rel. Faure*, (1972) 154 Ind.App. 553, 290 N.E.2d 456; *Shane v. Fields*, (1963) 135 Ind.App. 353, 190 N.E.2d 195. We thus conclude that the error was cured by the trial court's instructions. *Kelley v. State*, (1953) 231 Ind. 671, 110 N.E.2d 860.

## IX.

Prior to the presentation of final argument, the trial court stated that it was going to institute a new procedure whereby jurors would be allowed to ask questions of counsel following their respective arguments. Jurors with questions were instructed to submit written questions to the judge and he would examine them to see if they were proper. The purpose of the questions was to clarify whatever the attorneys might say during final argument. After the judge announced this new procedure, the following dialogue took place before the jury:

"*Court*: Why doesn't somebody object for the record to my procedure of permitting the Jurors to ask questions of the lawyers, Mr. Miller, for the record?

*Mr. Miller*: All right, you say it's brand new procedure?

*Court*: Yes, that's right, that's just so in the event that there is a conviction and an appeal that the higher court can take a look at it and decide whether it's proper or not, I believe it is. . . .

*Mr. Miller*: For the record, because it is a new procedure, we would object.

*Court*: I thank you for your objection."

The record indicates that only one juror offered a question pursuant to this procedure.

As appellant points out, there is no statutory authority permitting jurors to direct questions at counsel nor is there any case law giving authority for such procedure. Appellant argues that he was prejudiced because, by being forced to object to the court's procedure in the presence of the jury, it appeared to the jury that he was attempting to conceal facts by preventing the jury from asking questions.

We do not accept appellant's claim that he was prejudiced by this procedure. It was made very clear to the jury that this new procedure was being instituted by the judge himself. Also, the objection by defense counsel was expressly invited by the court. We fail to see how the jury could in any way fix responsibility or prejudice on either of the parties.

This Court has previously held that it is proper to permit jurors to propound questions during the progress of a trial, subject to proper regulation by the trial court. *Carter v. State*, (1968) 250 Ind. 13, 234 N.E.2d 650. We have further held that the recommended procedure in this situation would be to summon counsel to the bench in order to examine the question posed, and to make any objections outside the hearing, if not the presence, of the jury. *Cheeks v. State*, (1977) Ind., 361 N.E.2d 906. Although we do not recommend the procedures used by the trial court in the present case, we cannot say that appellant was prejudiced to an extent which would require reversal of his conviction.

## X.

Although the issue has not been raised, we note, *sua sponte*, that the trial

court erred in sentencing appellant. Tyson was convicted of both murder in the commission of first degree burglary and of first degree burglary. He received life sentences for the murders and a term of from ten to twenty years for burglary. Since, for purposes of sentencing burglary is considered a part of the offense for which he has already been sentenced under the felony (burglary) murder count, it was improper to impose a separate sentence for burglary. *Harris v. Oklahoma*, (1977) 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054; *Mitchell v. State*, (1978) Ind., 382 N.E.2d 932, 934. The sentence for burglary must therefore be set aside.

The cause is remanded to the trial court with instructions to vacate the sentence under Count III. In all other respects the judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result.