Daniel C. DAILEY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1078S232.

Supreme Court of Indiana.

July 17, 1980.
Rehearing Denied Sept. 22, 1980.

Terry E. Johnston, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Robert J. Black, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and sentenced to sixty (60) years imprisonment. He pleaded not guilty by reason of insanity. This direct appeal presents fifteen (15) issues. Our resolution of one of such issues would require us to remand the cause to reduce the sentence. However, the errors giving rise to two of the other issues, compel us to order a new trial.

The victim of the homicide was the woman with whom Defendant had been living. Members of the same household were decedent's two children by a prior marriage and an infant which she had borne by Defendant. The oldest child, ten year old Laura, was the sole witness to the killing. She testified that the homicide occurred shortly after breakfast, that her mother had kissed the Defendant at breakfast but that she did not recall whether or not they had talked to each other. The night before Laura had heard them talking about the baby. She did not know, but she thought they were just talking—not arguing. A day or two earlier, her mother had told Defendant that she was going to leave him, but then she had told him that she would give him one more chance.

After breakfast, her mother went upstairs and the Defendant followed her. Then Laura heard a commotion upstairs and started up the stairs. Her mother shouted for her to take the babies and run. Then she saw the Defendant strike her mother several blows with a sword. He continued to strike her as she came down the steps and after she fell to the floor.

Laura took the infant in her arms and her four-year old brother by the hand and ran outside to a neighboring apartment. The Defendant caught up to her, took the baby from her and fled in a truck. She had seen the sword before but had not seen her father handle it. He had kept it behind a chair. On one occasion, she thought she heard him sharpening the sword, but she had not seen him do so.

## ISSUE I

In closing argument, the prosecutor told the jury that they would not determine the sentence, that the judge would "determine whether he spends thirty to sixty years in the penitentiary, *which would mean fifteen to thirty years, if he gets good time.*" (Emphasis added). Defense counsel objected and moved for a mistrial. The court overruled the objection, commenting that defense counsel usually apprised the jury of the maximum time the defendant would serve, if convicted, and he did not see how he could preclude the State from advising as to the minimum term.

Counsel then continued, " * * * thirty to sixty years means fifteen to thirty, if you find him guilty of murder."

In *Feggins v. State*, (1977) 265 Ind. 674, 359 N.E.2d 517, during voir dire examination of the jury, a venireman inquired whether life imprisonment would mean imprisonment for the remainder of Defendant's life. We there held that the court acted properly in instructing the panel "while some prisoners sentenced to life were paroled, and some served the full life sentence, this issue was not for the jury's consideration." We there stated:

"We do not believe the Legislature intended to allow juries to circumvent this function of the governor, parole board and department of corrections by anticipating and allowing for the possibility of pardon, parole, or 'good time' sentence reduction.

* * * * * *

" . . . We hold that it is error for the court to instruct and improper for the prosecutor to argue that a convicted defendant will serve a lesser sentence than that to which the jury sentences him.
" . . . The best approach to the prevention of such inappropriate jury speculation, an approach which is fair to the accused and the State, is to instruct the jury upon their inquiry or upon the inadvertent introduction of the subject before the jury, that, first, the State is authorized by law to confine the accused for the full length of any sentence received by him, but that second, various devices exist which could reduce the length of any sentence received by the defendant, including parole, pardon, and 'good time', and that the length of the sentence which the accused will actually serve is contingent upon numerous future events and cannot be determined with any reasonable certainty at the time of trial. For this reason the jurors should exclude consideration of such devices from their deliberations so as not to fall into fruitless speculation."

*Feggins* at 684–686, 359 N.E.2d at 523–524.

Justice Hunter, although dissenting, also expressed the view that the jury should not be led to speculate, and said, "Upon an inquiry, the judge should inform the jury that ·powers of pardon and parole embrace matters exclusively relegated to the executive department and that powers of mitigation are not proper matters for their consideration."

"In three other cases outside this cycle, we have disapproved actions by the court or prosecutor which suggested to the jury that the defendant, if convicted, would not serve the statutory sentence. In *Pollard v. State*, (1929) 201 Ind. 180, 166 N.E. 654, 84 A.L.R. 779, we disapproved a prosecutorial argument similar to that in *Rowe*, although we held that the defendant had waived the error. In *Bryant v. State*, (1933) 205 Ind. 372, 186 N.E. 322, we reversed the conviction in a case in which the trial court had intimated to the jury that if the defendant were convict-

ed, the court would suspend his sentence. In *Deming v. State*, (1956) 235 Ind. 282, 133 N.E.2d 51, we quoted with approval a passage from *Coward v. Commonwealth*, (1935) 164 Va. 639, 178 S.E. 797, holding that it is error for the court to tell the jury that the sentence it imposes will not be served, or will be substantially diminished. It appears that the great majority of jurisdictions disapprove of such statements to the jury either by the court or the prosecutor. See Anno. 16 A.L.R.3d 1137 (1966); Anno. 12 A.L.R.3d 832 (1964)."

*Feggins v. State, supra,* 265 Ind. at 682–683, 359 N.E.2d at 523.

In *Garcia v. State*, (1979) Ind., 394 N.E.2d 106, 111, we applied the logic of the *Feggins* opinion and held that it was not error for the court to instruct, both preliminarily and finally, that in the event of a guilty verdict, the fixing of the penalty was a judicial function and not of concern to the jury.

The State's argument that such error was harmless is rejected. Its position is that although the court gave instructions on voluntary and involuntary manslaughter, as lesser included offenses, in view of the insanity defense, the jury had but two rational options, i. e. guilty of murder or not guilty by reason of insanity. Not only was the evidence not such as would necessarily have excluded the hypothesis that the defendant was acting under sudden heat, it in fact presented a substantial question in this regard.

■ Defense counsel made further objections and mistrial motions by reason of the prosecutor's improper argument, all of which went unheeded by the court.

"Mr. Houran: If he did kill her, was he not—was he insane at the time, legally insane, which would mean the court would then have a hearing later on to find out whether he is presently insane, then go under—into the Indiana Department of Mental Health and, as Dr. Hogle said, I think he could stay in the rest of his life, or, conversely, he could stay a month and be back on the streets again.

"Mr. Johnston: Objection, Mr. Houran is injecting—this is a jury trial, and he's injecting a personal opinion. There's no evidence of that. I would ask the court to admonish Mr. Houran and advise the jury to disregard his remarks; in the alternative, ask for a mistrial.

"Mr. Houran: He's imposing on my time, Judge.

"The Court: I think there was a final instruction.

\*   \*   \*   \*   \*   \*

"The Court: Just a minute. Mr. Johnston, you yourself tendered to the court defendant's Instruction No. 7, which brings that matter out.

"Mr. Johnston: No, it does not. Your Honor, I respectfully submit it does not.

"The Court: I'll deny the motion for mistrial."

And later in closing arguments, the following was heard:

"Mr. Houran: What I'm trying to tell you people is it's up to you to determine what's going to happen to this man, whether he's going back on the street tomorrow or whether he goes to an institution for some indeterminate time from a few days to the rest of his life or thirty—

"Mr. Johnston: Object, again, Your Honor.

"The Court: Overruled."

The State acknowledges that such comments were disapproved in our opinions in *Blackburn v. State*, (1979) Ind., 390 N.E.2d 653 and *Dipert v. State*, (1972) 259 Ind. 260, 286 N.E.2d 405, but argues that the argument was invited by the Defendant's tendered instruction No. 7, given by the court, which was:

"[I]f you find the defendant, Daniel C. Dailey, not guilty by reason of insanity, then the defendant shall continue to be detained in custody and shall not be released from custody until such time as the court, based upon its own determination and further based upon additional proceedings which the court shall con-

duct, makes a determination in this regard."

*Dipert v. State, supra*, makes it clear that such an instruction is appropriate only as a curative measure under circumstances indicating that the jury may have an erroneous view of the law upon the subject. Since there is nothing in the record to reflect that situation, the instruction should not have been given. Had it been appropriate, it, nevertheless, was incomplete in that it failed to instruct that such matters were not the concern of the jury and that their verdict should be based solely upon the evidence presented at trial. *Dipert*, 259 Ind. at 262, 286 N.E.2d at 406. However, the defendant's submission of and the court's giving of the instruction did not authorize the State to make improper argument.

Because of the potential for the State's improper argument to prejudice the defense and the court's failure to take corrective measures requested by Defendant, he is entitled to a new trial.

ISSUE II

Defendant's confession was suppressed, at a pre-trial hearing, because of a violation of his constitutional rights. Defendant contends that the State made repeated efforts to inform the jury that he had confessed to the police.

The record reflects that, on at least eight occasions, the prosecutor asked State witnesses whether or not Defendant had given a statement to the police, and on two occasions, the prosecutor asked the witness to relate what was said. These ten instances resulted in nine objections, six of which were sustained. Three of these rulings were accompanied by admonishments to the jury. In overruling the first three of such objections, the trial court stated that the police officers could testify as to Defendant's demeanor during the interrogation by the police officers but not as to the contents of the conversation. Upon Defendant's fourth objection, however, the trial court modified its earlier ruling and held that only evidence of Defendant's demeanor prior to the interrogation was admissible, and

he sustained the next six objections in like instances. Two such instances included revelations of the contents of the conversations.

■ The State argues that it was entitled to introduce evidence of Defendant's demeanor while in custody, to rebut his insanity defense. However, by making repeated attempts to bring before the jury that which had already been held to be inadmissible in evidence, the State placed Defendant in a position of "grave peril" to which he should not have been subjected. *Cf. Rohlfing v. State*, (1951) 230 Ind. 236, 102 N.E.2d 199; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312.

We are not persuaded that such errors were harmless in light of overwhelming evidence of guilt. Although there is no doubt that Defendant killed the decedent in a violent manner, as previously stated, his state of mind at the time was a matter upon which reasonable minds could differ.

### ISSUE III

■ Ind.Code § 35–4.1–4–3 (Burns § 35–50–1.A–3) requires the trial court to make a record of the sentencing hearing, including " * * * a statement of the court's reasons for selecting the sentence that it imposes," if it finds aggravating circumstances. The purpose of such statute is to confine the judge to proper grounds for either increasing or decreasing the presumptive or basic sentence provided for the offense and to enable this Court to determine the reasonableness of the sentence imposed, under the circumstances.

" * * * when a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The scope of review for sentences is now defined within our Rules for the Appellate Review of Sentences: '2(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the of-

fense and the character of the offender.' " *Gardner v. State*, (1979) Ind., 388 N.E.2d 513, 517.

The court's record in this regard is as follows:

"The Court feels any mitigating circumstances—I look for them, I fail to see any. The defendant's attitude, as you indicated, is one that he doesn't care. You indicated, get this crap over with. Evidently, this was the attitude when he murdered the person. She didn't do a darn thing to him or anybody. There's no evidence she did anything.

"I think aggravating circumstances, looking at about all the evidence in the trial, it's difficult to point to one thing.

"The Court will sentence the Defendant to 60 years Indiana State Prison."

Such record is not enlightening, except to advise that the court found no mitigating circumstances. It is grossly inadequate as a basis for increasing the sentence beyond the basic one and would require a remand for reduction of sentence to the basic period provided by the statute.

Because we reverse the judgment for the reasons hereinbefore set forth, we will not address the numerous other issues presented by this appeal, except to note that we have found no other error affecting the defendant's substantial rights.

■ Defendant's contention that there was insufficient evidence that he was competent to stand trial is not supported by the record. *Howard v. State*, (1976) 265 Ind. 503, 355 N.E.2d 833.

■ It was error for the court to vary from the procedure prescribed by the statute (Ind.Code § 35–5–2–2) for the presentation of the court appointed psychiatric testimony, without the express waiver of both the State and Defendant. However Defendant is estopped from assigning such error on appeal, inasmuch as he made no timely in-trial objection.

The judgment of the trial court is reversed and the case is remanded to the trial court for a new trial.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., not participating.